GAYLON DOYLE DORRIS *v.* SANDRA JEAN DORRIS

5-5377                                         460 S. W. 2d 98

Opinion delivered December 7, 1970

*Rhine & Rhine,* for appellant.

*Gus Camp,* for appellees.

CARLETON HARRIS, Chief Justice. On December 21, 1968, appellant, Gaylon Doyle Dorris, was granted an absolute divorce from appellee, Sandra Jean Dorris. Relative to the three minor children of the parties, the decree reflects:

"The court further finds that during said marital period, there were three children born, namely: Dena Lynn Dorris, a girl three years old; Tammy Kaye Dorris, a girl now 23 months old; and a boy named Darren Lane Dorris, now three months of age, and that the defendant has entered her consent for plaintiff to have custody of the two older children, and has waived all rights of alimony."

In accordance with this finding, appellant was given custody of the two older children and appellee was given custody of Darren Lane Dorris, each custody provision granting the right to the other parent to visit the children at all reasonable times. On September 23, 1969, Mrs. Dorris filed a petition with the court asserting that she had been denied reasonable rights of visitation with the children whose custody had been given to appellant; that "due to a change of circumstances", it would be to the best interest of the children that she be awarded custody, and she asked that the court's decree be amended to the extent that she be given custody of these children and that appellant be ordered to pay a reasonable amount for their support. Appellant answered the petition, denying that he had prevented appellee from exercising reasonable rights of visitation with the children and denying that there had been any change of circumstances; denied that it would be to the best interest of the children to change their home at that time, and he asked that the petition be dismissed.

The sole issues presented to the court by the pleadings were whether visitation rights had been denied appellee, or whether there had been a change in circumstances which would justify the transfer of custody. On hearing, appellee testified that the older children, who were living in the home of appellant's mother and father, were well fed and had proper clothing. She stated that there were some weeks that she didn't see the children, but when asked if that was because that appellant had refused the right or because it was inconvenient to her, replied, "A lot of times it is inconvenient for me to go and there is several times I didn't have any way to go up there". Actually, she said that there had been no serious trouble over visitation rights. The witness subsequently stated that she had been "going any time I want to, usually". Quite a bit of appellee's testimony related to her execution of the "Entry of Appearance and Stipulation", which was signed on October 22, 1968, the day before the divorce complaint was filed. In that instrument, Mrs. Dorris entered her appearance to the cause of action for divorce, agreed that appellant should have absolute custody of said children subject to her rights of visitation, and waived all rights of alimony. Upon interrogation, she testified, over objections by appellant, that the reason she entered into the agreement was because of threats made by Mr. Dorris.

"He told me he could bring up a case against me and one time when we were separated before I applied for a welfare check and we went back together and he told me if I ever tried to take the kids away from him again he would kill me or beat me so bad I would wish I were dead."

She said that she was not represented by an attorney of her own choice and never did talk to a lawyer other than going with her husband to his lawyer's office when the entry of appearance was signed. However, when asked if she understood the waiver, she replied "Yes. I was all mixed up and everything then, he had threatened me and I didn't want anything to happen so I signed it". Appellant denied that he had threatened

appellee in any manner. Other testimony was offered by both sides which will be subsequently touched upon.

At the conclusion of the hearing, the chancellor rendered an oral opinion in which he stated that the custody should be changed, but it is apparent from his remarks that this order was not based upon any finding of a change of circumstances. In fact, the court stated that it was "treating this as an initial hearing today". The order itself makes no mention of a change of circumstances; to the contrary, finding No. "2" sets out the reason for the change of custody, as follows:

"From the evidence as submitted herein both on oral testimony of witnesses by and on behalf of the petitioner, Sandra Jean Dorris, and the respondent, Gaylon Doyle Dorris, the court finds that at the time the entry of appearance and stipulation for custody was entered into that it was signed on October 22, 1968. That the original complaint was filed in the office of the Clerk of this Court and the divorce action was commenced on October 23, 1968, and that the entry of appearance and stipulation is not well founded. The court further finds that at the time the entry of appearance and stipulation was entered into that certain pressure was brought upon the said defendant herein, Sandra Jean Dorris."

From the order changing custody, appellant brings this appeal seeking a reversal. Three errors are asserted, which we proceed to discuss, the first being that the trial court erred when, on its own motion, and without notice to either party and with disregard to the issues joined in the pleadings, treated the hearing as an initial hearing.

We agree that this was error. When the proof relating to the reason for appellee signing the entry of appearance was introduced, appellant objected on the basis that it had nothing to do with the issues that had been raised by the parties in the pleadings. This was true, for as previously pointed out, the sole questions

raised were that appellee had not been given her visitation rights as permitted under the decree, and that there had been a change of circumstances. The evidence in question was entirely alien to these questions, and in fact, only related to events occurring prior to the granting of the original divorce. It is true that in a proper case it is within the sound discretion of the trial court to treat a complaint as amended to conform to the proof. In *Nance* v. *Eiland*, 213 Ark. 1019, 214 S. W. 2d 217, we said:

"It is always within the sound discretion of the court to permit a complaint to be amended to conform to the proof; and where the allegations in the complaint are insufficient, it is proper at the conclusion of the evidence to treat the complaint as amended to conform to the proof, *where there are no objections to the introduction of the evidence*[1] and no claim of surprise is made."

Still however, that holding does not diminish the basic right of a defendant to be apprised by a plaintiff's pleadings of the nature of the complaints or accusations against him. As long ago as 1844, in *Brodie et al* v. *Skelton*, 11 Ark. 120, this court said:

"If their rights were sought to be thus vitally affected, there can be no doubt but that they were entitled to be apprized of it, so that they could be prepared to make their defense, and if possible prevent so great a calamity."

In the case before us, the contested evidence was really in the nature of a new cause of action. In *Price* v. *Price*,[2] 215 Ark. 425, 220 S. W. 2d 1021, Mr. Price

[1] Our emphasis.

[2] In *C. R. I. & P. Ry. Co.* v. *Lockwood*, 244 Ark. 122, 424 S. W. 2d 158, in referring to the *Price* case, this court said that the amendment would have added allegations supporting new and different issues not raised by the facts alleged in the original complaint, and that the defendant would necessarily have had to offer evidence of facts materially different from that which would have been admissible on the issues made by the original pleadings. That is also true in the litigation now before us.

filed suit for divorce against Mrs. Price on grounds of indignities. During the course of the trial, there were several references to the desire of the plaintiff that the court treat the claim as amended to allege three years separation. In discussing whether such an amendment should have been allowed, this court said:

"We have held that before a trial starts, the plaintiff may file an amendment alleging a cause of action which matured after the filing of the original complaint; but no such amendment was filed prior to the commencement of the trial in this case. We have also held that if a new cause of action be alleged in the course of the trial, then the defendant may waive the right to object to such new cause of action. There was no such waiver here. We have in this case a situation in which the plaintiff, after the commencement of the trial and over the objections of the defendant, sought to allege a new and different cause of action for divorce—*i. e.,* the three years separation.

Even under our liberal rules for amendment of pleadings, we have held that, over the objection of the defendant, a new cause of action should not be permitted in the course of the trial. In *Patrick* v. *Whitley,* Mr. Justice Battle, after referring to section 6145, Kirby's Digest, said: 'Under statutes like this it has been uniformly held that no amendment can be allowed after the commencement of a trial which introduces into the case a new cause of action.'

We therefore hold that after the trial commenced, the court should not have permitted the plaintiff to file an amendment alleging three years separation as a ground for divorce, since the defendant objected to such amendment."

It follows that the court erred in reaching its conclusions on the basis herein discussed.

The next point for reversal relates to the fact that there was no showing of a change of conditions

which would justify moving the custody from appellant to appellee. We have already to some degree commented on this issue, and it might be added that only three "possible changes" had occurred since the rendition of the original decree. Mrs. Dorris testified that her husband was on the road more in his work than formerly, but this would not seem to be of any great importance since his mother had the actual physical custody of the children the greater part of the time irrespective of the job assignment of appellant. Kathleen Cupples, a witness for appellee, stated that she had observed the little girls in the street "darting in from in front and behind cars" and that she had to stop her vehicle to keep from hitting them. However, she admitted that her own children at times would go into the street, adding "not very much". The only other possible change in circumstances is that appellee had applied for welfare payments. "I applied for a check for me and my son and they told me if I got the girls I could get money for them." This application had been made two weeks before the trial. Though this decree is being reversed on the basis of point one, it is certainly questionable that sufficient circumstances were shown which were favorable enough to appellee's position to justify a new custody order.

Finally, appellant, under his third point for reversal, asserts:

"The lower court was in error when it held in effect that a divorce decree entered more than a year prior to a 'hearing to modify for child custody only,' the validity of the decree fully accepted by both parties, and without notice to either party, was void and announcing in open court, 'I am not setting the divorce decree aside. I am saying I would not get married if I was either one of them on that divorce decree' ".

As heretofore pointed out when quoting the court's order, in addition to finding that pressure was brought upon Mrs. Dorris to sign the entry of appearance, the court also found that the waiver was signed one day

before the divorce action was commenced and it was held "that the entry of appearance and stipulation is not well founded". From the remarks made from the bench, it is apparent that the court was of the opinion that since the waiver was signed before the suit was filed, and did not contain the words "I am filing this agreement and entry of appearance in a suit now pending" or "a suit to be later filed", the waiver was invalid and appellee had not actually entered her appearance.[3] Whether the fact mentioned by the chancellor had the effect of nullifying the entry of appearance is not a question presently before us; the original decree was not set aside,[4] and certainly, the execution of the waiver had nothing to do with a change of circumstances since the rendition of the divorce decree.

Appellant's point three is based upon a remark made by the chancellor at the close of the hearing. The record reveals the following:

"MR. RHINE: We are appealing it and I judge from your opinion here you are setting aside the divorce decree.

THE COURT: No, sir, I am not setting the divorce decree aside. It has not been challenged.

---

[3]The actual wording of this portion of the "Entry of Appearance and Stipulation" is as follows:

"I, Sandra Jean Dorris, above named defendant hereby enter my appearance to this cause of action for divorce and custody of two minor children to all intents and purposes as fully as if service of summons were issued and served in the manner and for the time required by law. * * * It is stipulated and agreed that depositions of witnesses to be read in evidence on behalf of plaintiff may be taken without notice to me and that all formalities in the taking, transcribing and signing are hereby waived."

[4]The Chancellor also commented upon the fact that only two children were mentioned in the waiver (the two whose custody was given to the father), but the divorce decree mentioned three. The record reflects that appellee admitted that appellant was not the father of the third child, and appellant testified that the chancellor who granted the divorce (not the same chancellor who heard the present petition) refused to approve the decree until it included the third child. Appellant's counsel redrafted the decree.

MR. RHINE: You say there is no legal divorce decree.

THE COURT: I am saying I would not get married if I was either one of them on that divorce decree.

MR. RHINE: You are challenging the waiver, you are holding there was no service on her?

THE COURT: I am holding the document that is filed here is not proper and she was not properly in court at that time on that waiver.

MR. RHINE: You are holding the divorce decree invalid?

THE COURT: I am not saying one thing about the divorce. The only thing I am interested in today is the custody. If you want to challenge the divorce decree you may do it. I feel that since that waiver does not comply with our case law I am not bound by that waiver in order to change this custody."

Of course, we can understand the concern of appellant since it might well be that any prospective spouse (for either party) would be reluctant to enter into marriage if aware of the content of the record which is quoted. From the testimony of the parties, it would seem doubtful that either would challenge the divorce decree, for it appears that they have no desire to live with each other. Nonetheless, since the decree was not set aside, we cannot pass upon this point.

In accordance with what has been said, the order of custody entered by the court on February 24, 1970, changing the custody of the two minor children, Dena Lynn Dorris and Tammy Kaye Dorris, from appellant to appellee, is hereby reversed and set aside.

It is so ordered.