**FD & S, a Connecticut limited partnership, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 81–2394.**

United States District Court, S.D. West Virginia, at Charleston.

March 2, 1983.

---

Larry G. Kopelman, Charleston, W. Va., for plaintiff.

Michael W. Carey, Asst. U.S. Atty., Charleston, W. Va., Thomas O. Plouff, Atty., Tax Division, U.S. Dept. of Justice, Washington, D.C., for United States.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

### I.

This matter is before the court on cross motions for summary judgment in the above-styled civil action. The record before the court consists of exhibits, admissions and affidavits filed by the plaintiff, and the pleadings. Jurisdiction of the court has been invoked under 26 U.S.C. § 7426, which provides for civil actions by persons other than the taxpayer for an alleged wrongful levy on property subject to a tax lien.

### II.

The plaintiff in this case, FD & S, is a Connecticut limited partnership. In 1978, FD & S made certain loans for mining purposes to a West Virginia corporation known as Xenko, Inc.[1] The original loan agreement, for a total amount of $250,000 to be paid out from time to time, was executed on March 22, 1978. An amendment increasing the loan amount was executed on July 20, 1978.[2] The amendment recites that $250,000 had been received by the borrowers as of the date of the amendment. The loan agreement contains the following language with respect to security for the loan:

11. *Security.* As security for the repayment of the loan made by the Lender to the Borrowers pursuant to this Agreement and any further future advances or loans, the Borrowers, in their corporate and partnership capacities, will at the Closing or such other time as requested by the Lender:

(a) Execute and deliver to the Lender a Security Agreement granting to the Lender all of the Borrowers' interest in and to any equity in the royalty payments due the Borrowers from the Lender with respect to the Sublease.

(b) Assign and transfer to the Lender and grant to the Lender a security interest in all of the right, title and interest in and to all assets of Borrowers presently owned by Borrowers and assign and transfer to the Lender and grant to the Lender a security interest in all of the right, title and interest in and to any and all other assets of Borrowers from time to time owned or acquired by Borrowers and not otherwise heretofore or hereby assigned, transferred or made subject to a security interest, including but not limited to all machinery, equipment, inventory, and accounts receivable presently owned by Borrowers or acquired after the date of the Agreement by Borrowers. At the Closing and from time to time thereafter during the term of this Loan Agreement, the Borrowers will deliver to the Lender such notes, assignments, security agreements, deeds, or other docu-

---

1. The loan agreement was signed by Guy Enicks and Jerome L. Workman as partners in E and W Associates and as shareholders of Xenko, Inc. Enicks also signed as president of Xenko.

2. Defendant's Memorandum in Support of Its Motion for Summary Judgment, Attachments A, B.

ments as may be reasonably requested by the Lender to conform [sic] or facilitate the enforcement of this Loan Agreement.

FD & S filed a financing statement with the Clerk of the County Commission of Fayette County, West Virginia, on June 27, 1978, and with the Office of the Secretary of State of West Virginia on June 30, 1978.[3] The statements are signed by Milton Dorison for the secured party and Jerome Workman for the debtor. A property schedule attached to the financing statements lists, as part of the mining and auxiliary equipment belonging to Xenko, Inc., a John Deere Rubber Tired End Loader, Model 644. At the time the original loan agreement was executed, Xenko had possession of a John Deere endloader under a lease purchase agreement with a John Deere dealer, C.D. Parsons Equipment, Inc.[4] At some point in late May or early June, 1978, it was determined that further advances would be made to Xenko, Inc., pursuant to the loan agreement. At the same time, FD & S and the principals of Xenko, Inc., decided to convert the lease purchase agreement for the endloader to a purchase agreement if financing were available. C.D. Parsons informed them that John Deere would finance the acquisition but that additional monies would be needed as a downpayment. Some of the loan proceeds were used for the required downpayment on the purchase agreement.[5]

By virtue of the purchase agreement, John Deere acquired a purchase money security interest in the endloader. On December 19, 1980, after Xenko, Inc., had defaulted on its payments, John Deere repossessed this equipment and thereafter, on January 20, 1981, sold it at public auc-

tion. The amount realized was $7,048.85 in excess of the value of John Deere's lien.

Xenko, Inc., was also in default on payment of certain federal taxes for 1978 and 1979. The United States filed notices of a tax lien with respect to these taxes in Fayette County on February 21, 1980, and March 5, 1980.[6] Subsequently, the Internal Revenue Service served a Notice of Levy on John Deere in the amount of $93,292.89 for the unpaid tax liabilities of Xenko.[7] After the sale referred to above, John Deere paid over to the United States $7,048.85, the amount of the excess proceeds.[8]

## III.

In its complaint, plaintiff alleges that it had a prior perfected security interest in the proceeds of the sale of the endloader which should take precedence over the tax lien of the United States. Although not so stated in its complaint, plaintiff's interest, if it were a valid security interest, would be entitled to protection under 26 U.S.C. § 6323, which provides, in subsection (a), that a federal tax lien "shall not be valid as against any ... holder of a security interest ... until notice thereof ... has been filed." Section 6323(h)(1) defines a security interest as:

[A]ny interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent

---

3. *Id.*, Attachments C, D.

4. Affidavits of Milton B. Dorison, 50% owner and general partner of FD & S, and Jerome L. Workman, vice president and 50% owner of Xenko, Inc. Both men were signatories to the loan agreement.

5. *Id.* The parties have referred to this equipment as a wheelloader. The court will denominate it as it was in the financing statement.

6. Defendant's Memorandum, Attachments E, F.

7. *Id.*, Attachment G.

8. The balance owing by Xenko to FD & S is not clear. Inasmuch as the parties have proceeded throughout as if that balance exceeds the $7,048.85 sum paid over to the United States, the court will treat the point as conceded by the defendant.

that, at such time, the holder has parted with money or money's worth.

W.Va.Code § 46–9–301 protects perfected security interests against subsequent judgment lien creditors.

The defendant contends that plaintiff never acquired a security interest in the endloader and therefore it can have no interest in the proceeds. Defendant's position is based on the language in section 11 of the loan agreement which speaks to "all other assets" of the debtor *"not otherwise heretofore or hereby* assigned, transferred or *made subject to a security interest."* W.Va.Code § 46–9–203 states that a security interest is not enforceable "unless the debtor has signed a security agreement which contains a description of the collateral." The endloader was subject to a purchase money security interest in favor of John Deere. Therefore, the defendant argues, it does not meet the description in the loan agreement, and no security interest could attach. The fact that the endloader was listed in the financing statement does not cure this deficiency, according to defendant.

Plaintiff responds that the intent of the loan agreement was to create security interests in after-acquired property as permitted by W.Va.Code § 46–9–108, and that these interests were to run to equipment financed by others although, in this circumstance, its security interest would be secondary. To support this position, plaintiff

has filed with the court the affidavits of Milton B. Dorison, part owner and general partner of FD & S, and Jerome L. Workman, part owner and vice president of Xenko, Inc.

■ The issue presented on this motion for summary judgment is one of contract interpretation.[9] The contract is to be found in the language of the quoted passage from the loan agreement, which, when considered with the filed financing statements, created security interests in the debtor's property as described,[10] including after-acquired property, within the meaning of W.Va.Code §§ 46–9–105(h) and 46–1–201(3).[11] The endloader was after-acquired property for which value was given and financing statements filed. W.Va. Code §§ 46–9–108, 46–9–204, 46–9–302. The alleged security interest of FD & S in the endloader is therefore enforceable and entitled to priority unless, as defendant contends, the agreement shows that FD & S and Xenko, Inc., did not intend to create a security interest in after-acquired property subject to a security interest in another.

It can be conceded, arguendo, that the bare language of the security agreement— "not otherwise heretofore or hereby ... made subject to a security interest"—is susceptible to the interpretation urged by defendant that an asset subject to another lien claim, however slight, would not be covered by the FD & S security interest.

9. Defendant does not dispute the amount of money at issue, $7,048.85. It does contend, albeit in conclusory terms, that there are issues of fact with respect to whether FD & S loaned money to Xenko, whether FD & S and Xenko intended the endloader to be security for the loan, and whether FD & S contemplated that it would have a security interest in equipment financed by others. However, defendant has put nothing in the record to substantiate this contention or to contradict the affidavits filed by the plaintiff. See Fed.R.Civ.P. 56(e).

10. The Official Comment to W.Va.Code § 46–9–203 states that the purpose of requiring a description of the collateral in the security agreement is to "minimize[ ] the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." Comment, ¶ 3.

11. Plaintiff has admitted that the only documentary proof of the security interest at issue is the loan agreement and financing statements. Defendant's First Request for Admissions; Plaintiff's Answer to Defendant's First Request for Admissions. These evidence the intent of FD & S and Xenko to grant under the terms of the security agreement, as quoted at pages 700–701, *supra,* a security interest in all present and after-acquired assets of Xenko, Inc. *See United Virginia National Bank/Seaboard National v. B.F. Saul Real Estate Investment Trust,* 641 F.2d 185, 189 (4th Cir.1981); *In Matter of Bollinger Corporation,* 614 F.2d 924 (3rd Cir.1980); *In Matter of Amex-Protein Development Corp.,* 504 F.2d 1056 (9th Cir.1974); *Barton v. Chemical Bank,* 577 F.2d 1329 (5th Cir.1978); *Sommers v. International Business Machines,* 640 F.2d 686 (5th Cir.1981).

Such a construction is, however, both unnecessary and contrary to the intent of the parties. This somewhat ambiguous clause is more logically interpreted as excluding an asset from coverage only to the extent of the lien of another thereon.[12] It is hardly to be supposed, for example, that an after-acquired asset worth $10,000 but subject to a purchase money lien balance of $100 was to be entirely eliminated from the security interest of FD & S. Indeed, the intent of the parties is made abundantly clear by their financing statement describing the endloader which was then subject to the prior lien in favor of John Deere.

 The court agrees with defendant's contention that a financing statement cannot have the effect of adding collateral not described and thus not intended to be included in a security agreement. *In re Mann,* 318 F.Supp. 32, 36 (W.D.Va.1970); *Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700, 704 (10th Cir.1972). However, when language in a security agreement is ambiguous on its face, parol evidence is admissible in determining the meaning given to it by the parties to the agreement. W.Va.Code § 46–1–103; 4 Anderson, *Uniform Commercial Code,* § 9–203:6. *See Annon v. Lucas,* 155 W.Va. 368, 376, 185 S.E.2d 343, 349 (1971); *Fredeking v. Grimmett,* 140 W.Va. 745, 86 S.E.2d 554 (1955); *Holiday Plaza, Inc. v. First Federal Savings and Loan Assoc. of Clarksburg,* W.Va., 285 S.E.2d 131, 133 (1981). While the intent of the parties could have been couched in more artful terms, a fair reading of this language, together with the filed financing statements as well as the uncontested affidavits of record, requires the granting of plaintiff's motion for summary judgment.[13]

**IV.**

Accordingly, there being no genuine issue of material fact, it is ORDERED that plaintiff's motion for summary judgment be, and it hereby is, granted.

It is further ORDERED that plaintiff recover of and from the defendant the sum of $7,048.85, together with interest from the date it was received by the defendant, as provided in 26 U.S.C. §§ 7426(g)(1) and 6621, and costs.

In order for judgment to be entered, the parties are directed to apprise the court of the date the defendant received the $7,048.85 and the applicable rate or rates of interest from the date of receipt until the judgment is paid. If the parties are unable to so stipulate in a writing filed with the court on or before Monday, March 7, 1983, a hearing thereon shall be held at 1:15 p.m. on Wednesday, March 9, 1983.

---

12. The quoted clause can also be treated as referring merely to after-acquired collateral in which FD & S could be said not to have a security interest at the time the loan agreement was executed because its lien would not attach until the debtor had acquired rights in that collateral. W.Va.Code § 46–9–204.

13. The affidavits of Jerome Workman and Milton Dorison state that the security agreement was intended to embrace all assets of Xenko, Inc., which were acquired as a result of the loan, including property financed by and thus subject to a security interest in another, in this case John Deere, and that FD & S understood its security interests would be subordinate to a purchase money interest. Such subordination is contemplated by the Uniform Commercial Code, W.Va.Code § 46–9–108, Official Comment, ¶ 1, and is commonplace in commercial financing circles.