In re the MARRIAGE OF Elizabeth
Cheryl ALLEN and Harold
Dean Allen.

Elizabeth Cheryl ALLEN, Respondent,

v.

Harold Dean ALLEN, Appellant.

No. 13398.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 28, 1984.

Thomas K. O'Loughlin, II, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for appellant.

John Wm. Ringer, Powell & Ringer, Dexter, for respondent.

CROW, Presiding Judge.

Harold Dean Allen ("Harold") appeals from a judgment (a) denying his motion to quash a garnishment against his wages, and (b) denying his motion for modification of the child support provisions in a decree of dissolution of marriage.[1]

Harold and Elizabeth Cheryl Allen ("Cheryl") married each other April 1, 1967, and became parents of two daughters, born February 1, 1970, and September 4, 1973, respectively.

On December 26, 1980, Cheryl and Harold, having ceased living together as wife and husband, signed a separation agreement which provided, among other things, that Cheryl would have primary custody of the daughters, and that Harold would pay Cheryl child support of $200 per month per child. The agreement went on to say:

> "It is understood that the Husband is presently employed by Southwestern Bell Telephone Company, and that his salary is subject to annual increases in August of each year. The child supports [sic] payments above set forth shall be automatically increased in August of 1981 and in August of each year thereafter by the same percent of increase as the Husband receives in his salary with Southwestern Bell. No Motion for Modification shall be necessary for said increase."

The agreement further provided that Harold would pay maintenance to Cheryl of $10 per month until her remarriage.

---

1. Harold's brief also assigns error regarding a "Contempt Judgment" against him for failure to pay a debt on which he and his former wife were jointly liable, and which he had been ordered to pay in the decree of dissolution. The contempt judgment allowed Harold to purge himself of contempt by paying the debt in specified installments. During oral argument before us, the parties stipulated that this issue had become moot, in that Harold had paid the debt, thereby ensuring that no sanctions would be imposed against him under the contempt judgment. Accordingly, we confine our attention to the garnishment and child support issues.

On December 29, 1980, Cheryl filed a petition to dissolve the marriage, praying, among other things, that the court approve the separation agreement, incorporate its provisions into the decree, and order the parties to perform the terms thereof.

On February 5, 1981, the trial court entered a decree of dissolution of marriage containing a finding that the separation agreement was "reasonable and not unconscionable." As to child support, the decree ordered Harold to pay Cheryl $200 per month per child. It further provided that "said child support payments shall be automatically increased in August of 1981 and in August of each year thereafter by the same percentage of increase as the Respondent [Harold] receives in his salary with Southwestern Bell Telephone Company." The decree also ordered Harold to pay Cheryl maintenance of $10 per month.

On October 22, 1982, Cheryl filed a "Motion to Determine Delinquency and for Issuance of Execution," alleging that in August, 1981, Harold received a 10.645 per cent salary increase, and that in August, 1982, he received a 7.78 per cent increase. By reason thereof, Cheryl asserted that Harold's child support payments should have gone up to $221.29 per month per child as of August 1, 1981, and to $238.51 per month per child as of August 1, 1982. Cheryl pleaded that Harold was paying only $200 per month per child, and was therefore $742.02 delinquent as of the date of the motion. She added that Harold had paid nothing on his maintenance obligation, and was thus $200 in arrears on that. Cheryl prayed the court to determine the aggregate amount owed, and to issue an execution therefor.

Several weeks later, Cheryl amended her motion, adding a request that Harold be ordered to make an "assignment of earnings" per § 452.350, RSMo 1978, as amended by Laws 1982, pp. 640–41.

In response to Cheryl's motion, Harold filed an answer denying Cheryl's allegations and stating affirmatively that no authority existed for the increase of any amounts in child support, or for any other amounts allegedly owed Cheryl.

On April 1, 1983, the trial court conducted a hearing on Cheryl's motion. Cheryl and Harold appeared in person and with their respective attorneys. Both parties testified as to payments by Harold to Cheryl on the child support, and Harold admitted he had paid none of the maintenance.

On April 8, 1983, the trial court entered a judgment finding that as of April 1, 1983, Harold owed Cheryl an unpaid balance of $1,686.64 for child support. In so finding, the trial court apparently accepted Cheryl's theory that by reason of Harold's salary increases, his child support obligation had automatically risen to $221.29 per month per child on August 1, 1981, and to $238.51 per month per child on August 1, 1982. The trial court also noted that Harold had paid nothing against the maintenance award since entry of the decree, and thus owed Cheryl $280 maintenance as of April 1, 1983. The trial court ordered execution issued for $1,966.64 (the sum of the $1,686.64 delinquent child support and the $280 delinquent maintenance). The court also ordered Harold to pay Cheryl an attorney fee of $300. Additionally, the judgment commanded Harold to assign Cheryl $487.02 per month from his earnings for the child support ($238.51 per month per child) and maintenance ($10 per month).

On April 20, 1983, a writ of execution was issued to collect the $1,966.64 delinquent child support and maintenance, and also the $300 attorney fee. In aid thereof, a summons to garnishee was served on Southwestern Bell Telephone Company, attaching Harold's wages. The execution and garnishment were returnable July 20, 1983.

On May 2, 1983, the attorney who had represented Harold up to that time withdrew, and the attorney who now represents Harold entered an appearance. That same day, Harold, through his new attorney, filed a motion to set aside the judgment of April 8, 1983. Harold's motion itemized certain "important, relevant and material evidence" which Harold's prior counsel

failed to present. Additionally, the motion asserted that the trial court "incorrectly interpreted the decree in that it is only reasonable that the overall wage increase of the Respondent [Harold] should be considered when support is increased." According to the motion, evidence regarding Cheryl's expenses and income, and Harold's expenses, were necessary "to make a reasonable interpretation of the decree of dissolution." The motion prayed for an order setting aside the judgment of April 8, 1983, and for a rehearing. We hereafter refer to Harold's motion of May 2, 1983, as the "motion for rehearing."

On May 13, 1983, Harold filed a motion to quash the garnishment against his wages. This motion, hereafter referred to as the "motion to quash," alleged the judgment of April 8 was not final because the motion for rehearing was pending. Thus, according to the motion to quash, "no final judgment or determination of arrearage presently exists upon which garnishment can be issued."

Simultaneously with the motion to quash, Harold filed a motion seeking, among other relief, an order "striking the provisions for automatic increases of child support from the decree of dissolution, or, alternatively, an order clarifying the ambiguities of the clause." This motion, referred to hereafter as the "motion for modification," also sought "a redetermination of the child support to be set at a reasonable level based upon all the facts and circumstances."

The motion for modification alleged the provision regarding child support in the decree was unreasonable because (a) the formula was ambiguous and had been the subject of litigation, (b) Harold's overall wage level had stayed constant or decreased since the decree, (c) Harold's expenses had increased since the decree, (d) Cheryl's income had increased since the decree, and (e) Cheryl's expenses had "changed" since the decree. Nowhere in the motion for modification was there a contention that the provision for automatic increase in child support was invalid.

On May 31, 1983, Cheryl filed a motion to strike Harold's motion for rehearing and Harold's motion to quash. Cheryl asserted that inasmuch as the motion for rehearing was filed May 2, 1983, and the motion to quash was filed May 13, 1983, each came later than 15 days after entry of the judgment on April 8, and therefore neither extended the 30-day period during which the trial court retained control over the judgment. Consequently, said Cheryl, the trial court was without jurisdiction to reopen the judgment, it having become final May 8, 1983. We hereafter refer to Cheryl's motion of May 31 as the "motion to strike."

On June 3, 1983, Cheryl filed an answer to Harold's motion for modification, and she also filed a "cross-motion" seeking an increase in the maintenance from $10 per month to $90 per month.

On June 7, 1983, the trial court conducted a hearing on Harold's motion for rehearing, Harold's motion to quash and Harold's motion for modification, together with Cheryl's motion to strike and Cheryl's cross-motion to increase maintenance. Both parties appeared in person and by counsel, and both parties testified.

Harold explained that his gross wages for the two-week pay period ending May 7, 1983, were $1,043.73. Amounts withheld were $223.87 for federal income tax, $69.93 for social security and $27.12 for state income tax. Harold added, however, that because of the garnishment and a "wage assignment" (presumably the one ordered in the judgment of April 8, 1983), he received only $9.38 in "take home" pay. For the pay period ending May 21, 1983, his gross wages were $1,261.83. After withholding for federal income tax ($302.65), social security ($84.54), and state income tax ($33.26), and additional withholdings for union dues, the garnishment and the wage assignment, he took home $26.05.

On June 30, 1983, the trial court entered a judgment disposing of all motions heard June 7. The judgment concluded that Harold's motion for rehearing (filed May 2, 1983) was not timely, in that the judgment on Cheryl's motion to determine the arrear-

ages had been entered April 8, 1983. The June 30 judgment added, however, that the trial court had nonetheless considered the motion for rehearing, and had found that the judgment of April 8 was proper.

The June 30 judgment denied Harold's motion to quash and denied Harold's motion for modification. Regarding the latter, the judgment found there had been no changed circumstances so substantial and continuing as to make the terms of the decree unreasonable.

The June 30 judgment recited that the above rulings effectively disposed of the matters raised by Cheryl's motion to strike. Lastly, the June 30 judgment denied Cheryl's cross-motion to increase maintenance, but awarded her an attorney fee of $300.

On July 22, 1983, Harold filed a notice of appeal to this court. The notice identified the judgment appealed from as the one entered June 30, 1983. The judgment of April 8, 1983, was not mentioned.

Harold states his first point thusly:

"The trial court failed to grant appellant's motion to quash a garnishment and assignment of wages and in doing so acted improperly in that:

1. The garnishment and assignment of wages took more than that allowed by the Federal Garnishment Act, 15 U.S.C. § 1671 *et seq.* (1970)."

The point is misleading. It indicates Harold's motion to quash was directed against both the garnishment and the wage assignment. That, of course, is not so. The motion to quash attacked only the garnishment; it did not challenge the wage assignment.

Additionally, the motion to quash asserted only one ground for quashing the garnishment, i.e., that the judgment of April 8, 1983, was not final. The motion said nothing about the restrictions on garnishments under the federal Consumer Credit Protection Act, Subchapter II, 15 U.S.C.A. §§ 1671–77.

■ Moreover, we find nothing in the record showing that Harold, either before or during the hearing on June 7, 1983, cited the federal garnishment restrictions to the trial court as a ground for quashing the garnishment or the wage assignment. Given the general rule that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide, *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982); *Young v. Smith by Burke,* 648 S.W.2d 916, 919[6] (Mo.App.1983), Harold's complaint that the amount withheld by his employer from his earnings exceeded the amount allowed by the federal garnishment restrictions could be denied on that ground alone.

■ However, even had the issue been properly presented to the trial court, Harold would not have been entitled to an order quashing the garnishment. The federal garnishment restrictions specify certain maximum percentages of an individual's disposable earnings that may be garnished by a judgment creditor. When the debt is for the support of any person, the amount subject to garnishment ranges from 50 to 65 per cent of disposable earnings, depending on the circumstances. 15 U.S.C.A. § 1673(b)(2). If the amount of Harold's disposable earnings withheld by his employer because of the garnishment exceeded the amount allowed by the federal restrictions, Harold could have obtained relief by a motion asking the trial court to determine the amount of his wages protected from the garnishment. *See Brown v. Brewington,* 513 S.W.2d 768 (Mo.App. 1974); *Goforth v. Goforth,* 301 S.W.2d 877 (Mo.App.1957). The trial court could have thereupon held a hearing and entered an order specifying the amount of Harold's disposable earnings that should be paid to the sheriff pursuant to the garnishment, and the amount immune therefrom.

■ Harold failed to request that relief, seeking only to have the garnishment quashed. The garnishment, so far as we can determine, was properly issued and served, and Harold has not directed our attention to any defect therein. Harold cites no case, and we find none, holding that a garnishment must be quashed in

toto merely because an employer withholds, for the benefit of the judgment creditor, a greater percentage of an employee's disposable earnings than the law allows.

By analogy, if a judgment creditor seeks an execution and garnishment in aid thereof in an amount in excess of the amount actually due, the debtor may move to quash and the court should quash only so much thereof as is in excess of the amount actually due. *Hardin v. Hardin,* 512 S.W.2d 851, 855[4] (Mo.App.1974). In such circumstances, it is incumbent on the court to judicially determine, as near as may be, the amount due, and to quash the execution only so far as the amount seized thereunder exceeds such sum. *Id.*

We are persuaded that the same procedure should apply where the garnishee, in an attempt to comply with the writ, withholds a greater percentage of the employee's disposable earnings than the law permits. In asking the trial court to quash the garnishment in its entirety, Harold sought relief to which he was not entitled.

It must also be pointed out that we cannot determine, on the record before us, whether the sums withheld by Harold's employer from Harold's disposable earnings for the two pay periods in issue were attributable solely to the garnishment, or whether a portion of each sum withheld was attributable to the wage assignment. It may be that the employer scrupulously followed the federal garnishment restrictions in regard to the garnishment, and that the employer assumed that additional amounts should be withheld under the wage assignment. If that is what occurred, Harold would obviously have been entitled to no relief regarding the garnishment.

Moving to the wage assignment, we understand Harold to say that the trial court should also have quashed it because it, in combination with the garnishment, resulted in his employer's withholding a greater percentage of his disposable earnings than permitted by the federal garnishment restrictions.

As already observed, the record does not reveal how much, if any, of the withholdings from Harold's disposable earnings by his employer were attributable to the wage assignment. Indeed, the record does not reveal how much was paid into court by Harold's employer pursuant to the garnishment or the wage assignment. The hearing was held June 7, 1983, and the execution and garnishment were not returnable until July 20, 1983.

Assuming, however, that a portion of each sum withheld from Harold's disposable earnings for the two pay periods in May, 1983, were attributable to the wage assignment, we fail to see how that would justify quashing the assignment in its entirety. Certainly, Cheryl was entitled to the benefit of the wage assignment so long as the amount of Harold's disposable earnings withheld thereunder did not exceed the amount protected by federal or Missouri law. Assuming, without deciding, that the amount of Harold's disposable earnings withheld by his employer pursuant to the wage assignment and the garnishment together should not have exceeded the federal garnishment restrictions, Harold's remedy, as observed earlier, was to seek a determination of the proper amount by the trial court.

Harold, however, sought no such relief, and we will not convict a trial court of error for failing to take action which was never requested. *Gambrell v. Kansas City Chiefs Football Club,* 621 S.W.2d 382, 385[5] (Mo.App.1981). Harold's first point is, accordingly, denied.[2]

Harold's second point reads as follows:

**2.** We are not oblivious of Harold's plight in receiving only $9.38 and $26.05, respectively, from two paychecks. That situation will evidently not recur, as Harold's employer thereafter ceased withholding anything pursuant to the wage assignment, believing that the amount withheld pursuant to the garnishment equaled the maximum permitted by the federal garnishment restrictions, and that nothing additional could be withheld under the wage assignment. The employer indicated that once the garnishment was satisfied, the employer would honor

"The trial court failed to modify the decree of dissolution because of substantial and continuing changed circumstances or incorrectly interpreted it, and in doing so acted improperly because:

1. The appellant's disposable earnings had gone down or not increased from the date of the decree of dissolution.

2. The court incorrectly interpreted the terms of the decree by increasing support and determining arrearage where there were [sic] no increase in the appellant's disposable income.

3. A decree provision for increased child support payments based only on increased hourly rates is unconscionable, unfair and unenforceable.

4. Automatic increases do not follow requirements for modification set out in 452.370 (Mo.Rev.Stat.).

5. The decree provisions requiring an automatic support increase is [sic] vague, unfair, not reasonably certain and void.

6. The child support provision cannot be executed upon by the court or court clerk without resorting to external proof and is thus void."

In studying this point, we note that Harold offered no evidence to support reason "1" at the hearing on April 1, 1983. The only evidence before the trial court at that hearing was that Harold (as alleged by Cheryl) had received an increase of 10.645 per cent in his basic wage rate effective August 9, 1981, and an additional increase of 7.78 per cent effective August 8, 1982. The judgment of April 8, 1983, was therefore based on uncontradicted evidence that supported Cheryl's position.

■ Harold's present attorney obviously realized this when he filed the motion for rehearing on May 2, 1983, as that motion alleged Harold's previous attorney failed to present evidence showing a reduction in Harold's overall income and an increase in his expenses. That motion, of course, was untimely, and the trial court so found. More importantly, however, there was no appeal by Harold from the April 8 judgment. If that judgment was separately appealable [3] (which we need not decide), the time for appeal therefrom had expired when Harold filed his notice of appeal on July 22, 1983. Rules 73.01(a)(3), 81.04(a) and 81.05(a), Missouri Rules of Civil Procedure (14th ed. 1983); *Kirtz v. Advanced Instruments, Inc.*, 581 S.W.2d 868, 869–70[1] (Mo.App.1979). But even if an appeal could have been taken from the April 8 judgment on July 22, such was not done, as the notice of appeal makes no reference to the April 8 judgment. Consequently, Harold cannot in this appeal assign any error regarding that judgment. *In re Marriage of E.A.W.*, 573 S.W.2d 689, 692[7] (Mo.App. 1978).

■ Therefore, as Harold cannot now complain of error in the April 8, 1983, judgment (which was based on the evidence heard April 1) and as he does not allege any change in circumstances between April 8, 1983, and the hearing on June 7, 1983 (which hearing was the basis of the June 30, 1983, judgment whence came this appeal), there is nothing in reason "1" that provides any basis for reversal of the June 30 judgment.

The same is true of reasons "2" and "4." If the trial court erred in ruling that Harold's child support obligation had gone up because of his salary increases in August, 1981, and August, 1982, that error was made in the April 8, 1983, judgment, not the one entered June 30, 1983. Accordingly, it cannot be rectified in this appeal.

the wage assignment in an amount that did not exceed 60 per cent of Harold's disposable earnings.

**3.** The contempt issue (footnote 1, *supra*) was heard along with Cheryl's motion to determine the arrearages on April 1, 1983, but the contempt judgment was not entered until June 30,

1983. It could therefore be argued that because all issues heard on April 1, 1983, were not adjudicated until June 30, 1983, the judgment of April 8 was not final for purpose of appeal until June 30. We express no opinion on the merit of that hypothesis.

We thus turn our attention to reasons "3," "5" and "6," to determine whether they require reversal of that portion of the judgment of June 30 which denied Harold's motion for modification. All three reasons challenge the validity of the provision that automatically raises Harold's child support obligation each time he receives an annual salary increase.

The trial court, of course, had concluded in the judgment of April 8, 1983, that the provision was valid, and that Harold's child support obligation had automatically gone up when his salary increased in August, 1981, and again a year later. The arrearages determined by the trial court in the judgment of April 8 were the same as those calculated by Cheryl when she applied the provision to Harold's annual raises.

As noted *supra*, Harold's motion for modification nowhere asserted that the automatic increase provision was invalid, and we find nothing in the record indicating that Harold ever voiced that contention to the trial court. It is therefore doubtful that Harold has preserved the point for review. *Germann v. City of Kansas City*, 577 S.W.2d 54, 55[1] (Mo.App.1978); *Ahlgren v. Colvin-Weber Realty & Investment Co., Inc.*, 507 S.W.2d 686, 688[3] (Mo. App.1974).

█ We need not, however, decide whether Harold may raise the point here because, in our view, the validity of the automatic increase provision is not in issue on this appeal. This appeal is from the June 30, 1983, judgment which denied Harold's motion for modification. When that judgment was entered, the trial court had already, on April 8, 1983, upheld the validity of the automatic increase provision, and fixed the current amount of Harold's child support obligation. The only child support

question the trial court had to decide from the evidence it heard on June 7, 1983, was whether the amount of child support set by the April 8 judgment should be reduced. Nothing in the evidence on June 7 demonstrated a change in circumstances since April 8 that would justify a reduction in the child support fixed April 8.

It is consequently unnecessary for us to pass on the validity of the automatic increase provision, and we express no opinion thereon. If, in the future, Cheryl asserts that another increase in Harold's salary has triggered another increase in child support,[4] Harold can challenge that assertion by attacking the automatic increase provision in the trial court, and the issue will be before the trial court for adjudication. Or, should there hereafter be changes in circumstances which, in Harold's opinion, justify a reduction in child support, he can file a motion to modify and thereby place the issue before the trial court.

At present, Harold's child support obligation is fixed by the judgment of April 8, 1983, at $238.51 per month per child, and Harold's second point affords no basis for reversing the judgment of June 30, 1983, which denied his motion for modification of that obligation. Harold's second point is, accordingly, denied and the judgment of June 30, 1983, is affirmed.

HOGAN, TITUS and MAUS, JJ., concur.

PREWITT, C.J., not participating.

---

4. See *Payne v. Payne*, 635 S.W.2d 18 (Mo. banc 1982), and *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981), which deal with dissolution decrees setting maintenance by means of a formula.