**CENTERRE BANK NATIONAL ASSO-
CIATION, Plaintiff-Appellant,**

v.

**MISSOURI FARMERS ASSOCIATION,
INC., Defendant-Respondent.**

No. 49737.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 22, 1986.

Motion for Rehearing or Transfer to Su-
preme Court Denied Aug. 20, 1986.

Application to Transfer Denied
Oct. 14, 1986.

Marion F. Wasinger, Wasinger, Parham & Morthland, Hannibal, for plaintiff-appellant.

Perry Bascom, Bryan, Cave, McPheeters and McRoberts, St. Louis, for defendant-respondent.

GARY M. GAERTNER, Judge.

Plaintiff, Centerre Bank National Association (Centerre), brought this action for an injunction and order of replevin against defendants, Conrad Farms, Inc. (Conrad Farms), Leonard F. Conrad and Marietta A. Conrad (the Conrads). Centerre claimed a security interest in certain property of defendants, including crops growing on lands owned by defendants. Missouri Farmers Association, Inc. (MFA), thereafter intervened in this action and filed a counterclaim against Centerre. MFA claimed that it held a prior security interest in the crops growing on defendants' lands. MFA sought actual and punitive damages against Centerre for conversion of those crops. After the trial court granted Centerre's motion for summary judgment on MFA's counterclaim for punitive damages, the counterclaim for actual damages was segregated from the original action and tried to a jury. The jury subsequently awarded MFA $203,000 in actual damages. Centerre appeals from that judgment, and MFA cross-appeals. We affirm in part and reverse in part.

On July 1, 1980, Conrad Farms and the Conrads executed security agreements to secure payment of a promissory note given to Centerre. The security agreements granted Centerre a security interest in various property owned by Conrad Farms and the Conrads, including the following:

> All annual and perennial crops grown, growing, planted or to be planted ... on all or a portion of the real estate (hereinafter referred to as the "Real Estate") owned or leased by Borrower [Conrad Farms and the Conrads] and situated in Clark ... [County], Missouri.... A full legal description of the Real Estate and a statement of the record ownership and any encumbrances thereof is [sic] appropriately identified and attached [to this security agreement]."

The attached real estate descriptions described all lands owned or leased by Conrad Farms and the Conrads in Clark County, except that land known as the "Christian Farm."

Also on July 1, 1980, Conrad Farms and the Conrads gave Centerre Uniform Commercial Code (UCC) financing statements, which Centerre filed in Clark County on

July 3, 1980. These statements also contained legal descriptions of all lands owned by Conrad Farms except the Christian Farm.

On July 8, 1981, Leonard F. Conrad gave MFA a combination promissory note and security agreement, and a UCC financing statement. The security agreement purported to grant MFA a security interest in "all crops," but neither the security agreement nor the financing statement contained any description of the real estate upon which the crops were growing or to be grown.

On September 28, 1981, Conrad Farms and the Conrads executed and delivered additional UCC financing statements to Centerre. Those statements essentially duplicated the statements given to Centerre on July 1, 1980, except that the Christian Farm was added to the description of real estate on which the collateral crops were growing. Centerre filed these statements in Clark County on September 28, 1981.

During the latter half of September of 1981 Centerre began investigating the financial status of Conrad Farms to determine whether Conrad Farms could repay its indebtedness to Centerre, which was at that time in default. On October 5, 1981, counsel for Centerre made formal demand on counsel for Conrad Farms and the Conrads that Centerre be given access to all crops subject to Centerre's security interest so that such crops could be harvested and sold, and the proceeds could be applied to the outstanding indebtedness of Conrad Farms and the Conrads. At about this same time, Centerre became aware that MFA claimed a security interest in the same crops in which Centerre claimed a security interest.

On October 8, 1981, Centerre filed a petition for replevin and injunction. An officer for Centerre filed an affidavit with the petition, stating that Centerre had a valid first lien security interest in all crops growing on real estate owned by Conrad Farms, including crops growing on the Christian Farm. The affidavit provided that this security interest was created by the execution of the security agreements on July 1, 1980.

On October 9, 1981, the circuit court issued a temporary restraining order restraining all parties from harvesting the crops in question except under the direction and control of Centerre.

On October 13, 1981, Conrad Farms and the Conrads executed and delivered to MFA certain security agreements and UCC financing statements granting MFA a security interest in the 1981 corn crop growing on lands owned by Conrad Farms. Legal descriptions of all these lands, including the Christian Farm, were attached to the security agreements and financing statements. MFA properly filed these financing statements in Clark County on October 14, 1981.

On October 22, 1981, pursuant to an agreement among Centerre, MFA and the Conrads, the court entered a stipulation and order modifying the temporary restraining order. The modification provided that the crops could be harvested under the joint direction of Centerre and MFA.

On October 23, 1981, MFA filed a motion to intervene in this action and filed an answer, petition, cross-claim and counterclaim against all parties. MFA asserted that it held a security interest in all the crops at issue that was prior in right to the security interest held by Centerre. MFA sought to recover actual damages against Centerre for conversion of all the crops harvested on lands owned by Conrad Farms and the Conrads. MFA asserted that by obtaining the temporary restraining order, Centerre had prevented MFA from exercising its right to harvest the crops during the previous two weeks of "good harvest weather." MFA also sought to recover punitive damages against Centerre in the amount of $100,000.

The harvest commenced on or about October 23, 1981, and continued into November of 1981. The first crops harvested were those on the Christian Farm. One of the Conrads' sons, who conducted the harvest, estimated that the yield on the first

day of the harvest was at least thirty percent less than it would have been had the harvest commenced on October 1, 1981. The crops were subsequently sold and the proceeds from such crops are currently in an account at Centerre.

On November 21, 1981, Centerre filed an answer to MFA's counterclaim and also filed a cross-claim, requesting the court to declare the relative rights of Centerre and MFA with respect to the crops at issue.

On June 25, 1983, Centerre filed a motion for summary judgment on MFA's counterclaim for actual and punitive damages. On October 14, 1983, the trial court entered an order granting Centerre's motion for summary judgment on the issue of punitive damages, but denying the motion with regard to MFA's claim for actual damages. The court declared that Centerre had a superior security interest in all crops growing on lands specifically described in its July 1, 1980, security agreements, but that MFA held a superior security interest in the crops grown on the Christian Farm. The court further ruled that MFA was entitled to a trial by jury on the issue of conversion.

On October 29, 1984, the case proceeded to trial on MFA's counterclaim for actual damages. Prior to voir dire, the trial court denied MFA's motion in limine to exclude any evidence regarding Centerre's good faith in handling the harvest and Centerre's efforts to cooperate with MFA in conducting the harvest. MFA also moved for a directed verdict, arguing that it was entitled, as a matter of law, to recover all proceeds from the harvest on all lands owned by Conrad Farms and the Conrads because Centerre had commingled the Christian Farm crop with the crops harvested from other real estate. That motion was also denied.

At trial, the trial court took judicial notice of its ruling on October 14, 1983, and advised the jury that MFA had a security interest in the crops grown on the Christian Farm, whereas Centerre had no security interest in those crops. At the close of all the evidence, the court denied Centerre's

motion for directed verdict and directed a verdict in favor of MFA on the issue of conversion, leaving the jury to decide only the issue of MFA's damages. The court instructed the jury that it should award MFA the fair market value of the corn crop growing on the Christian Farm when Centerre first exercised dominion over that crop. The jury thereafter returned a verdict in favor of MFA in the amount of $203,000. Centerre appeals from that verdict, and MFA cross-appeals.

In its first point on appeal, Centerre argues that the trial court erred in denying Centerre's motion to strike the jury from the trial of MFA's counterclaim. We need not address this issue, however, because we find herein that MFA did not make a submissible case of conversion against Centerre.

In its second point on appeal, Centerre argues that the trial court erred in denying Centerre's motion for summary judgment and holding as a matter of law that Centerre had no security interest in the crops growing on the Christian Farm. This point contains three subpoints. In its first subpoint, Centerre argues that the generic description of the real estate on which the crops were to be grown, as set forth in Centerre's July 1, 1980, security agreements, was sufficient to give Centerre a valid security interest in the crops growing on the Christian Farm.

■ Section 400.9–203(1)(b) RSMo 1978 requires that a security agreement contain a description of the land on which crops are growing as a prerequisite to the validity of any security interest in such crops. Section 400.9–110 RSMo 1978 provides that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Under Missouri law, a legal description of the real estate in question is not required, but the description must be definite enough to enable a third party, aided by reasonable inquiries which the security agreement itself suggests, to identify and locate the property. *In re Johnson*, 21 B.R. 484, 485 (Bank.W.D.Mo.1982).

■ Applying these principles, we find that Centerre's security agreements are insufficient to give it a security interest in the Christian Farm crop. As quoted above, the security agreements did contain a general description of "all or a portion of the real estate (hereinafter referred to as the "Real Estate") owned or leased by Borrower and situated in Clark [County], Missouri." The sentence immediately following, however, served to qualify this general description: "A full legal description of the Real Estate ... is appropriately identified and attached hereto." Attached to the security agreements were full legal descriptions of all of the real estate owned by Conrad Farms and the Conrads, *except* the Christian Farm. By referencing and attaching these specific legal descriptions, Centerre effectively foreclosed the necessity of further inquiries by a third party. The security agreements clearly suggested that Centerre's security interest was limited to those properties specifically described; an interested third party would thus have been reasonable in ending his inquiries with the security agreements themselves. We hold, therefore that Centerre's security interest extended only to the crops growing on the lands specifically described in the attached legal descriptions, and did not encompass the Christian Farm.

Although this is a case of first impression in Missouri, courts in other jurisdictions have confronted this issue and reached conclusions similar to ours. In *People's Bank v. Pioneer Food Industries, Inc.*, 253 Ark. 277, 486 S.W.2d 24 (1972), the Supreme Court of Arkansas considered whether a crop description in a combined security agreement and financing statement was sufficient to put a third party on notice under the Uniform Commercial Code. The instrument contained a general description of "all crops" grown on real estate owned by the debtor, but also contained the following language: "Said crops to consist of 1,200 acres of soybeans, 28 acres of cotton, and 30 acres of rice. *These crops to be planted on the following lands.*" *Id.* at 26 (emphasis added). The instrument then set forth an accurate legal description of certain farm lands, but failed to describe three parcels of land on which the debtor had grown and harvested crops. The supreme court held that this instrument did not give the creditor bank a security interest in the three omitted parcels of land. The creditor bank argued that the general description encompassing "all crops" was sufficient to give it a security interest in the omitted parcels. The supreme court disagreed, noting that the bank had restricted this general description by limiting it to certain crops and acreages, and by giving legal descriptions of particular tracts of land: "We think the recited limitations restrict and control the general description, 'all crops,' which is relied upon by appellant [bank] as being a sufficient description." *Id.* at 27. *See also In re Laminated Veneers Co., Inc.*, 471 F.2d 1124, 1125 (2nd Cir.1973); *In re I.A. Durbin, Inc.*, 46 B.R. 595, 600 (Bankr.S.D.Fla. 1985).

In light of the foregoing analysis, Centerre's first subpoint is denied.

■ In its second subpoint, Centerre claims that it had a superior security interest in the crops growing on the Christian Farm because MFA had actual notice that Centerre claimed such an interest when MFA perfected its security interest on October 14, 1981.[1] As explained herein, however, the security agreements and financing statements received by Centerre did not grant any valid security interest in the crops on the Christian Farm. Any knowledge on MFA's part of Centerre's mere *claim* to a valid security interest is, therefore, of no consequence. Accordingly, this subpoint is denied.

In its third and final subpoint, Centerre argues that it had a prior security interest

---

1. Although MFA received a security agreement and financing statement from Leonard F. Conrad on July 8, 1981, neither of these documents contained any description of the real estate on which the crops were growing. Those documents thus failed to create a valid security interest under § 400.9–203(1)(b) RSMo 1978.

in the crops growing on the Christian Farm because it filed additional financing statements before MFA perfected its security interest and because these financing statements cured any defect in Centerre's security agreements. Centerre's original security agreements and financing statements, executed on July 1, 1980, contained no legal description of the Christian Farm. On September 28, 1981, however, Centerre filed additional financing statements which included a description of the Christian Farm. Given that MFA did not perfect its security interest in the crops on the Christian Farm until October 14, 1981, Centerre argues that it has a superior interest in those crops.

■ Under the Missouri Uniform Commercial Code, it is the security agreement that "creates or provides for a security interest." Section 400.9–105(h) RSMo 1978. A financing statement is merely evidence of the creation of a security interest and does not itself constitute a security agreement. *Shelton v. Erwin,* 472 F.2d 1118, 1120 (8th Cir.1973). Hence, other jurisdictions have consistently held that "when a financing statement describes a greater quantity of property than that described in the corresponding security agreement, the security interest is defined by the narrower description contained in the security agreement." *Allis-Chalmers Corp. v. Staggs,* 117 Ill.App.3d 428, 72 Ill.Dec. 840, 453 N.E.2d 145, 148 (1983). *See also FD & S v. United States,* 574 F.Supp. 699, 703 (S.D. W.Va.1983); *In re H & I Pipe and Supply Co., Inc.,* 44 B.R. 949, 951 (Bankr.M.D. Tenn.1984); *In re Door Supply Center, Inc.,* 3 B.R. 103, 106 (Bankr.D.Idaho 1980).

■ Applying the principles set forth above, we hold that Centerre's later-filed financing statements could not have enlarged the scope of the original security agreements, and thus Centerre did not obtain a security interest in the crops on the Christian Farm. Accordingly, this final subpoint is denied. We therefore affirm the trial court's conclusion that MFA held the only valid security interest in the Christian Farm crop.

■ In its third point on appeal, Centerre argues that it had a prior security interest in the Christian Farm crop because it had possession of that crop when MFA perfected its security interest on October 14, 1981. Centerre admits that it never presented this legal theory in the trial court and thus did not properly preserve this issue for appellate review. *See In re Marriage of Allen,* 681 S.W.2d 535, 539 (Mo.App.1984). Centerre requests that we nevertheless review this issue under Rule 84.13(c), the "plain error" rule. The plain error rule, however, may be invoked only if the error complained of has engendered hatred, passion or prejudice resulting in manifest injustice or a miscarriage of justice. *Executive Jet Management & Pilot Service, Inc. v. Scott,* 629 S.W.2d 598, 607 (Mo.App.1981). We find no such error on the record before us. This point is denied.

In its fourth point on appeal, Centerre argues that the trial court erred in overruling its motion for directed verdict and granting MFA's motion for directed verdict on the issue of Centerre's liability for conversion of the Christian Farm crops. Centerre contends that MFA failed to make a submissible case of conversion. We agree.

■ "Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Maples v. United Savings and Loan Ass'n,* 686 S.W.2d 525, 527 (Mo.App.1985). Conversion may be proven by showing either a tortious taking, use or appropriation to the person in possession that indicates a claim of right in opposition to the owner's rights, or a refusal to surrender possession to the owner on demand. *Hardesty v. Mr. Cribbin's Old House, Inc.,* 679 S.W.2d 343, 347 (Mo.App.1984). To recover for conversion under any of these theories, however, plaintiff must show that at the time of the alleged conversion, he was the owner of or had the right to possession of the property converted. *Hampton v. Stephens,* 691 S.W.2d 287, 289 (Mo.App.1985).

MFA's claim for conversion fails because it had absolutely no possessory rights in the Christian Farm crop at the time of the alleged conversion. The evidence shows that the latest date at which the conversion could have occurred was October 9, 1981, when Centerre obtained a temporary restraining order prohibiting the harvest of the Christian Farm crop.[2] As explained above, however, MFA did not obtain a valid security interest in that crop until October 14, 1981. MFA thus had no right to possession of the Christian Farm crop at the time of the alleged conversion by Centerre. We hold, therefore, that MFA failed to make a submissible case of conversion. The $203,000 judgment entered in favor of MFA is thus reversed.

In its final point on appeal, Centerre argues that the trial court erred in precluding Centerre from introducing evidence of its good faith in harvesting the crops. Because we have decided that the judgment against Centerre must be reversed, we need not reach this issue.

In its first point on cross-appeal, MFA argues that the trial court erred in granting Centerre's motion for summary judgment on the issue of punitive damages arising out of MFA's claim for conversion. Having determined that MFA did not make a submissible case for conversion, we need not address this point.

In its second and final point on cross-appeal, MFA argues that its security interest in the Christian Farm crop should give it priority as to all of the crops harvested by Conrad Farms, given that Centerre wrongfully commingled the Christian Farm crop with other crops. Having previously held that Centerre cannot be held liable to MFA for tortious conversion of the Christian Farm crop, this point must be denied.

The judgment is affirmed in part and reversed in part.

KAROHL, P.J., and SIMON, J., concur.

2. "The institution of a legal proceeding which restricts the owner's actual control over his property may give rise to an action for tortious conversion." *United Missouri Bank South v. United States,* 423 F.Supp. 571, 576 (W.D.Mo. 1976).