CHICAGO, ROCK ISLAND AND PACIFIC
RAILWAY COMPANY *v.* ASA JULIUS LOCKWOOD

5-4465                                            424 S. W. 2d 158

Opinion delivered February 19, 1968

*Wright, Lindsey & Jennings,* for appellant.

*Switzer & Griffin* and *Martin, Dodds & Kidd,* for appellee.

JOHN A. FOGLEMAN, Justice. Chicago, Rock Island and Pacific Railway Company appeals from a judgment awarding Asa Julius Lockwood $75,000 as damages for personal injuries suffered while performing his duties on May 12, 1964, as a brakeman employed by the company. Only two points are relied on for reversal. They are:

I.

The trial judge erred when he permitted appellee to interject and substitute a new issue in the litigation by amending the complaint at the close of plaintiff's [appellee's] testimony.

II.

The $75,000.00 verdict is excessive.

We will discuss these in the order listed.

I.

Appellee made the following allegations relating to appellant's liability:

"That at the time aforesaid the handle of one of the handbrakes and the brake machinery on said train which Plaintiff, as such brakeman, was required to operate was imperfectly constructed, defective and unsafe; that said imperfection, defectiveness, inadequacy and unsafeness could have been by said Defendant discovered and known by the use and exercise by it of ordinary care and diligence, and were at the time aforesaid known to the Defendant; but the same were unknown to the Plaintiff.

\* \* \*

That the negligent acts complained of herein by the Defendant have damaged the Plaintiff, ASA JULIUS LOCKWOOD, in the sum of $150,000.00.''

There was no evidence of negligence on the part of appellant. At the conclusion of appellee's evidence, his attorney, before resting, made a motion that the complaint be amended to conform to the proof—specifically to state that appellee's injuries proximately resulted from violation by appellant of 45 USCA § 11,[1] which required appellant to equip its cars with a hand brake that would perform properly when used in the usual and customary manner.

The amendment was allowed by the trial court, over appellant's objection that pleading the Safety Appliance Act, which had not previously been referred to, injected a new and different theory and basis of liability into the case. Appellee had testified that on the occasion of his injury he was going to get up on a pole car and set a hand brake. In order to do so, he mounted a little platform on the end of the car and took hold of the brake handle preparatory to swinging around on the platform. He took hold of the brake handle with his right hand and turned loose of a grab iron on the side of

---

[1]This is a part of the act known as the Federal Safety Appliance Act.

the car which he held with his left hand. Thereupon his entire weight was thrown on his right hand and the brake handle snapped, causing him to fall to the ground. After the fall, he still had the broken brake handle in his hand. Appellee stated that he had never performed this duty in any other way, had never seen it done in any other way, and that as far as he knew, this was the normal, customary manner in which it was done.

There was no motion for a continuance by appellant, nor is there any contention by appellant that the evidence was not sufficient to support a verdict under the Federal Safety Appliance Act. No evidence was offered by appellant.

Title 45, USCA § 11 requires that all railroad cars be equipped with efficient hand brakes. This act does not impose an absolute liability, but it does impose an absolute duty, and a carrier is not excused from liability by any showing of care, however assiduous. *Myers* v. *Reading Co.*, 331 U. S. 477, 67 S. Ct. 1334, 91 L. Ed. 1615 (1947); *Brady* v. *Terminal R. Ass'n.*, 303 U. S. 10, 58 S. Ct. 426, 82 L. Ed. 614 (1938). Even though a complaint alleges negligence consisting of failure to warn an injured employee, failure to inspect and failure to furnish the employee with a safe place to work, without mentioning this section of the statute, the railroad's absolute duty is brought into the case if there is evidence which shows a brake to be inefficient. *Long* v. *Union R. Co.*, 175 F. 2d 198 (3d. Cir. 1949). In such a case, allegations of negligence are considered surplusage. *Colwell* v. *St. Louis-S. F. Ry. Co.*, 335 Mo. 494, 73 S. W. 2d 222 (1934). The only burden on a plaintiff is that he prove by direct or circumstantial evidence either a specific defect or the failure of the brake to function efficiently on normal, ordinary operation. *Selby* v. *Chesapeake & Ohio Ry. Co.*, 11 Ill. App. 2d 395, 137 N. E. 2d 657 (1956).

Under the Arkansas Civil Code, a plaintiff is only required to state the facts constituting his claim or cause

of action. Ark. Stat. Ann. §§ 27-1101, 27-1113. The statement of facts constitutes the cause of action. *Albersen* v. *Klanke*, 177 Ark. 288, 6 S. W. 2d 292; *Grytbak* v. *Grytbak* (on rehearing), 216 Ark. 674, 227 S. W. 2d 633, 635; *Taylor* v. *Taylor*, 224 Ark. 328, 273 S. W. 2d 22. All that is necessary is that the complaint state a cause of action within the jurisdiction of the court. *Crowder* v. *Fordyce Lbr. Co.*, 93 Ark. 392, 125 S. W. 417. It is not necessary to plead a federal statute in order to have the benefit of it, so long as allegations constituting a cause of action thereunder are made. *St. Louis I. M. & S. Ry. Co.* v. *Hesterly*, 98 Ark. 240, 135 S. W. 874 (reversed on other grounds) 228 U. S. 702, 33 S. Ct. 703, 57 L. Ed. 1031).

Under Ark. Stat. Ann. § 27-1160 (Repl. 1962), a court may at any time, in furtherance of justice and on such terms as may be proper, amend any pleading by conforming it to the facts proved, when the amendment does not substantially change the claim or defense. Under the circumstances existing here, the trial judge did not abuse the discretion vested in him by this section of the civil code. The amendment permitted here effected a less substantial change than was involved in *El Dorado Pipe & Supply Co.* v. *Penguin Oil Co.*, 174 Ark. 843, 296 S. W. 713, wherein reversible error was found in refusal to permit the amendment under this section. There the amendment would have changed the action from a suit to charge a surety on a note to one on open account with an allegation that the defendant received the benefit of certain property sold by plaintiff. The amendment was requested on the basis of plaintiff's offer of proof that the property was sold for the benefit of the defendant at whose request plaintiff accepted a note made by a third party to whom defendant traded the property. In that case the defense of ultra vires asserted in defendant's answer to the original complaint would have been eliminated by the amendment.

In the case at bar, the appellee alleged and offered evidence of facts which constituted a cause of action un-

der the Safety Appliance Act. Appellant has not indicated any defense of which it was deprived by the amendment or any evidence which it might have offered in defense of the amended complaint which would not have been admissible under the issues raised by the original complaint. If appellant had asked for a continuance, the burden would have been upon it to show to the satisfaction of the court how it had been misled to its prejudice. *Williams* v. *Bullington*, 195 Ark. 253, 111 S. W. 2d 507. Since prejudice to appellant has not been shown and is not apparent, we cannot say that the trial judge abused his discretion in granting the amendment incorporating into the pleading an allegation not essential to the recovery sought.

We consider cases cited by appellant to be distinguishable. In cases such as *Patrick* v. *Whitely*, 75 Ark. 465, 87 S. W. 1179, and *Bridges* v. *Harold L. Schaefer, Inc.*, 207 Ark. 122, 179 S. W. 2d 176, the amendments refused would have permitted recovery based on contracts or agreements different from those asserted in the original pleading, or would have included elements of damage not recoverable under the original pleading. The amendments in *Butler* v. *Butler*, 176 Ark. 126, 2 S. W. 2d 63, and *Price* v. *Price*, 215 Ark. 425, 220 S. W. 2d 1021, would have added allegations supporting new and different issues not raised by the facts alleged in the original complaint. Defendants in the two latter cases would necessarily have had to offer evidence of facts materially different from that which would have been admissible on the issues made by the original pleadings. Such is not the case here.

## II.

Appellant's argument that the verdict is excessive is based largely upon these contentions:

1. Appellee's 1966 earnings were $2,124.00 greater than his earnings in 1962, the year prior to that in which his injury occurred.

2. No loss of future earnings is anticipated.

3. Appellee's work hours would cause fatigue independent of his injury.

4. Appellee had injured his back on two previous occasions.

5. The medical testimony giving appellee a $22\frac{1}{2}\%$ disability rating based on limitation of motion does not support the verdict in view of the doctor's statement that appellee had made excellent recovery after his surgery and appellee's demonstrated ability to perform his job.

In considering whether this verdict should be set aside as excessive, we note that there was testimony before the jury tending to show the following facts:

Appellee had a hard fall, from which he suffered "unbearable" pain in his back. He was in discomfort while in traction for ten days. His left leg became drawn and would not straighten out. The effects of a myleogram were so painful that he couldn't raise his head for two days. He went through quite an ordeal after a second myleogram and disc removal surgery in May 1964. When he went to work for a few trips, after this surgery, his back kept getting worse until he felt like "an old rusty spike" had been driven in him. A spinal fusion done in June 1965 was very painful and thereafter for about six weeks he could "hardly bat his eyes." For sometime after the injury, he couldn't sit or stand still and couldn't sleep or stay in bed. Often he would get up around midnight and spend the rest of the night on a couch, lying on the floor, or sitting up and drinking coffee. His trouble sleeping continued for about two years. His wife had to help him dress and undress for a time after the injury and again after surgery. He wore a corset after the injury and was in traction for a ten-day period before any surgery was done. He wore an uncomfortable brace for a while after the disc removal and a "chair-back" brace for two or three months af-

ter the fusion. He was in hospitals undergoing traction, therapy or surgery on six different occasions totalling about 70 days. He was "scared to death" when surgery was suggested. For a long time he was without much hope, his mental outlook was bleak and he was despondent because of his inability to work. He and his family had financial problems. His disposition changed from that of an easy-going, "life of the party" individual to a short-tempered and impatient one. This has affected his relationship with his wife and family. Prior to his injury, he was a very active person, participating in fishing, swimming, baseball and other activities with his children. In spite of their invitations, he cannot now continue these activities. A fine father-son relationship has been destroyed by his inability to spend most of his off-duty time with his son as he formerly did. For two years he was unable to do anything when not at work except sit or lie down. There were long periods of time when he could not drive an automobile and he cannot sit comfortably in one now. He will experience some pain in the future, depending upon his activities. Lockwood's medical bills totaled $4,245.86, of which appellant paid $2,800.00. A balance of $855 is due Dr. Logue.

Appellee's job at the time of the injury was on a run from El Dorado to Crossett. His pay rate at that time was $19.03 for an eight-hour day, plus certain overtime pay. This run involves a nine to ten-hour day. His earnings were:

| 1961—$7,697 | 1962—$ 7,992 | |
| 1963— 6,958 | 1964— 1,179 | (Including 3 weeks vacation pay) |
| 1965— 1,659 | 1966— 10,116 | |

Only a few months after his injury Lockwood became entitled by seniority to the job on the El Dorado-Winnfield, Louisiana run on which he returned to work on November 17, 1965. During the time he was unable

to work, his pay rate increased to $21.06 for eight hours, plus overtime pay. He worked nine to ten hours on the Crossett run, but the hour range on the Winnfield run is twelve to sixteen. If he had been able to work in 1964 and 1965, he would have made $11,000 to $12,-000 on the higher pay scale.

After appellee returned to work in November 1965, he found it necessary, because of the condition of his back, to miss at least one trip every two weeks until the fall of 1966. He also missed a week or ten days during the month preceding the trial for the same reason. Had it not been for these absences, he could have made $12,-000 or $13,000 in 1966.

Lockwood has a high school education. He has never done anything except work for the railroad. He has a limitation of motion in bending and a minor weakness of his leg. His permanent disability of the body as a whole resulting from the fall is 22½%. He now avoids one of the duties of his job—lifting 300-pound frogs after a car derailment. He also avoids getting on certain types of railroad cars because of his inability to bend in order to get a hand hold. On his present job, his back bothers him after he stands on the ground "switching." The longer he continues this, the worse it hurts. On some days the pain is great enough to bring tears to his eyes, and he has to lie down in the caboose of the train between stations. Just bending, squatting or sitting down is painful. The present run is too heavy a job for him. He has continued on this job because of his financial needs and in order to see if he could do the job. If he leaves the Winnfield run, he cannot get back on the Crossett run until there is an opening. His doctor has advised him to do a minimum of strenuous work and to get off his present job. It is his doctor's opinion that the duties associated with Lockwood's work for appellant are beyond his physical capacity. The doctor has recommended that appellee change jobs because it is his opinion that one who has this history of back trouble

and surgery should not expose himself to the rigors of full-time railroading. In the opinion of this doctor, this injury to the spine and resultant spinal fusion will probably cause the back to age more quickly and may accelerate the onset of arthritis. Further, after a fusion, jumping on and off a train will increase the chance of his having disc trouble in the upper spine. If appellee can continue at his present work, he will be eligible for retirement at age 65 or, if able, he could continue to work until age 70. A person his age at the time of the trial has a life expectancy of 31 years.

Appellee is drawing payment for 40% disability from shrapnel wounds about the head, shoulders and arms suffered during World War II. He has been drawing this compensation since the injury. He was employed by appellant after his world war service. He also suffered back injuries in February of 1961, and in the spring of 1963. He had osteopathic treatment in June, July and August 1963, for the 1963 injury. Neither injury was disabling, and he was never caused to miss a day's work because of either back injury or his military disability. None of these injuries or their results had interfered with the performance of his duties.

While the jury award is extremely liberal, we cannot say that it is so excessive as to shock the conscience of the court, when we review, in the light most favorable to appellee, the evidence of pain, suffering and mental anguish suffered and to be suffered, earnings lost and to be lost, and the nature, extent, duration and permanency of the injury.

The judgment is affirmed.

JONES, J., dissents in part.