## The PEOPLE'S BANK v. PIONEER FOOD INDUSTRIES, Inc., and ALICE-SIDNEY DRYER and SEED CO.

5-6012                                              486 S.W. 2d 24

### Opinion delivered October 16, 1972

*Arnold, Hamilton & Streetman,* for appellant.

*George E. Pike,* for Pioneer Food Industries, Inc., *David F. Gillison Jr.* and *Keith, Clegg & Eckert,* for Alice-Sidney Dryer and Seed Co.

Frank Holt, Justice. The principal issue on this appeal is whether the crop description in a combined Financing Statement and Security Agreement is sufficient to put a third party on notice pursuant to our Uniform Commercial Code.

The appellant bank loaned Dewey Beavers $40,000 to finance his 1969 crops. As part of the security for this loan, Beavers gave the bank a security interest in all the crops grown by him in Chicot and Ashley Counties. The combined Financing Statement and Security Agreement given by Beavers was duly filed. Beavers harvested

his soybeans and sold them to appellee Alice-Sidney Dryer and Seed Company. The debtor, also, harvested his rice and delivered it for drying and storage to Alice-Sidney. The rice was sold for Beavers by Alice-Sidney to appellee Pioneer Food Industries, Inc. None of the proceeds from the sales of the soybeans and rice crops was ever applied against Beavers' indebtedness to the bank. At the end of the crop year, since Beavers had defaulted on his obligation, the bank filed suit against him for the unpaid balance. The bank, also, instituted a third party action against Alice-Sidney and Pioneer alleging they had converted crops grown by Beavers on which the bank claimed a lien. The chancellor found that Beavers owed the appellant bank a balance of $22,565.72, together with interest costs and attorney's fees and accordingly awarded judgment to the appellant against Beavers, who does not appeal.

As to the appellant's claim against the appellees, the chancellor found that the description of the crops in the Security Agreement was insufficient to put a third party on notice except for 7.6 acres of rice. The bank was awarded a judgment for $1,046.52 against the appellees for the rice grown upon the 7.6 acres contained in a specifically described tract. The appellant bank appeals from that part of the chancellor's decree which denied its claim against Alice-Sidney for the soybeans purchased by it in 1969 from Beavers. The appellees cross-appeal from that part of the decree which awarded judgment against them in favor of the bank for $1,046.52 on the rice crop.

The appellant, on direct appeal, contends for reversal that the Chancery Court erred in holding that the crop description in the Security Agreement was insufficient to require third parties to take notice of the bank's security interest in the crops. The description in the combined Financing Statement and Security Agreement recites:

"(i) All crops of every kind grown or to be planted, heretofore or hereafter, within one year from date of the execution hereof, on lands commonly known and referred to as the Dewey Beavers Farm in Chicot and Ashley Counties, Arkansas, or at any other place in Chicot and Ashley Counties, Arkansas. ****

(v) Other:
Said crops to consist of 1,200 acres of soybeans, 28 acres of cotton, and 30 acres of rice. These crops to be planted on the following lands."

Then followed immediately an accurate legal description of certain farm lands in Chicot and Ashley Counties. It appears undisputed that this legal description omitted three other parcels of lands on which Beavers planted and harvested crops. Only the lands in Chicot County are involved in this litigation.

Appellant's position is that the filing of the combined security documents which state that the appellant, the secured party, has a lien on all crops of every kind grown on Beavers' farm or any other place in Chicot County is sufficient to put a reasonable person on notice. Appellant cites Ark. Stat. Ann. (1961 Add.) § 85-9-110, which states: "Any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Our attention is called to the Commissioner's Comment: "The test of sufficiency of a description laid down by this section is that the description do the job assigned to it *** that it make possible the identification of the thing described. *** The same test of reasonable identification applies where a description of real estate is required in a financing statement." Appellant urges that the Committee Comment requires a liberal construction as to the description of the crops and real estate. Also, appellant asserts that § 85-9-402, which requires a description of the land as well as the crops grown thereon, does not require a detailed description of the land for a crop lien. Appellant, therefore, contends that to hold the general description "all crops" does not suffice, when liberally construed, would reach a result contrary to the intent of the UCC writers and contrary to our decisions predating the UCC.

The position of the appellees is, however, that the description is not sufficient to put a reasonable person on notice. § 85-9-203 is cited which provides that a security interest in crops is not enforceable against third parties unless the Security Agreement contains "a description of the land concerned***." The Comment to the Code states

that "in the case of crops *** the best identification is by describing the land and sub-section (1) (B) requires such a description." Also, cited is § 85-9-402 (1) which, with respect to crop liens, requires "the statement must also contain a description of the real estate concerned." Clearly, the pertinent provisions of the Code require some type of a description of the land. *Piggott State Bank* v. *Pollard Gin Co.,* 243 Ark. 159, 419 S.W. 2d 120 (1967): see, also, Secured Transactions Under the Uniform Commercial Code, 18 Ark. L. R. 30, p. 54, and *United States* v. *Big Z Warehouse,* 311 F. Supp. 283 (1970). In the case at bar, the appellant inserted an accurate legal description to only three parcels of Beavers' lands and omitted another three parcels on which Beavers' crops were grown.

We agree with the chancellor in his finding that the Financing Statement and Security Agreement did not sufficiently describe the lands to put a third person on notice under the UCC (except as to the 7.6 acres of rice). We do not reach the argument made by the appellant that the general description, which encompasses "all crops" grown by Beavers on his farm or elsewhere in Chicot County, is alone sufficient inasmuch as appellant restricted this general description by limiting it to three crops (soybeans, cotton and rice) and specifying the exact number of acres of these different crops to be grown and then proceeded to give a legal description of only three of the six tracts on which these named crops and an unnamed crop (milo maize) were admittedly grown. We think the recited limitations restrict and control the general description, "all crops," which is relied upon by appellant as being a sufficient description.

On cross-appeal Alice Sidney and Pioneer first assert for reversal of the judgment against them that the appellant failed to discharge the burden of proof to show that the rice purchased by Pioneer came from lands on which the appellant held a Security Agreement and, further, that appellant bank failed to show the fair market value of the rice. We cannot agree. The undisputed evidence by Beavers is that 7.6 acres of rice was grown on a tract specifically described in the Financing Statement. Beavers, also, testified that he harvested rice on a 19 acre tract which was not described. The yield from

both tracts was purchased by Pioneer from Alice-Sidney, which acted as a broker on a lot bid at $2.295 per bushel for the commingled production. Beavers testified that he "produced approximately 60 bushels of rice per acre in 1969." A computation of these figures (7.6 x 60 x $2.295) results in $1,046.52 as the monetary value ascribed to that part of the rice grown on the 7.6 acres which were included in the specific description as found by the chancellor. Certainly we cannot say that his finding on this issue is against the preponderance of the evidence.

Neither can we agree with the argument by the cross-appellants that the conduct of the appellant bank's officials constituted an estoppel which precludes the bank from claiming anything from cross-appellants. It appears that two individuals are part owners of a local gin company as well as directors of appellant bank. One of these individuals is manager of the local gin company and president of the bank. Beavers was indebted to both the gin company and the bank. When the gin company made a demand on Beavers for payment of his account, Beavers directed cross-appellant Alice-Sidney, buyer of a quantity of his soybeans, to issue a check to the gin company for $4,500 from the proceeds due him. This check was credited to Beavers' account at the gin company. It appears from the grain settlement sheets that Alice-Sidney purchased Beavers' soybean crop during the period of October 15, 1969, and November 10, 1969. According to these settlement sheets with Beavers, Alice-Sidney had paid Beavers for all of his soybeans on or before November 24, 1969, the date the $4,500 check was issued by Alice-Sidney to the local gin company. On the following day (November 25) Pioneer paid Beavers, at Alice-Sidney's direction, for his interest in his rice crop. We do not perceive in this situation how Alice-Sidney or Pioneer can rely upon the principle of estoppel. It would be useless for the bank officials to notify Alice-Sidney or Pioneer that it claimed a lien against Beavers' crops after Alice-Sidney and Pioneer had paid Beavers for his crops. Suffice it to say that ordinarily, as Alice-Sidney admits, the personal interest and activity of a bank official cannot be imputed to the bank itself. We

think that rule is controlling in this situation and prevents application of the doctrine of estoppel for either Alice-Sidney or Pioneer.

Neither can we agree with the cross-appellants' contention that an asserted agreement between Beavers and the appellant bank officials constituted a waiver of the bank's claim on the crops sold by him. Beavers testified that the bank officials agreed in January, 1970, that if he would make a $4,500 payment on his delinquent account his loan would be extended for one year. Beavers sold a quantity of catfish and made the requested payment upon his bank loan. The appellant bank denied any such extension agreement. A waiver is a voluntary relinquishment of a known right. In the circumstances, we cannot agree that this disputed agreement for an extension of the delinquent loan constituted a waiver of any claim by appellant upon the crops sold by Beavers.

Cross-appellant Alice-Sidney, also, asserts that it acted as an agent for Beavers, a disclosed principal, and, therefore, the chancellor erred in rendering a judgment against it. Beavers delivered his rice crop to Alice-Sidney for drying and storage. As a further service, Alice-Sidney acted as agent or broker by finding a buyer, Pioneer, for Beavers' rice. Alice-Sidney instructed Pioneer to make one check to it for $220.70 in payment "for drying." Pioneer, also, was directed by Alice-Sidney to pay the $2,418.55 balance directly to Beavers as the owner. These payments were promptly made as authorized. It is undisputed that payment for the rice was specifically directed by Alice-Sidney to a source other than the appellant bank which had a sufficiently recorded lien with respect to the 7.6 acres of rice. Admittedly, Alice-Sidney never checked the appropriate records to determine if a lien existed on this rice crop. In the circumstances, as between the appellant bank and Alice-Sidney, we think the doctrine of estoppel precludes Alice-Sidney from asserting the invalidity of the bank's judgment. In the recent case *Branch* v. *Standard Title Company*, 252 Ark. 737, 480 S.W. 2d 568 (1972), we recognized the equitable maxim that where one of two innocent persons must suffer a loss it is better that it be borne by one whose conduct could have prevented the loss or situation.

Affirmed on direct and cross-appeal.