LAWHON FARM SUPPLY, INC. *v.* Jerry HAYES

93-840                                                    870 S.W.2d 729

Supreme Court of Arkansas
Opinion delivered February 21, 1994

*Dover & Dixon, P.A.*, by: *David A. Couch* and *William Dean Overstreet*, for appellant.

*H. David Blair*, for appellee.

TOM GLAZE, Justice.* In an attempt to bring a tort action against appellee Jerry Hayes, the appellant, Lawhon Farm Supply, Inc., asks this court to find a duty of care between a purchaser of farm products, and the holder of an unattached security interest. *See* Ark. Code Ann. § 4-9-203 (Repl. 1991) of the Uniform Commercial Code. We decline to do so.

On July 20, 1988, Lawhon advanced farm items such as seed, chemicals and fertilizer to Carlyle Good, a farmer. In return, Good executed a promissory note payable to Lawhon in the amount of $135,000, along with a purported enforceable security interest in crops to be grown on his farm in Woodruff County — specifically 1600 acres of milo and 200 acres of soybeans.[1] In its

---

[1]Only the security interest in the milo is at issue.

attempt to perfect its interest in Good's crops, Lawhon filed a financing statement and security agreement with the circuit clerk in Woodruff County and a central farm filing with the Secretary of State.[2] While Good was a resident of St. Francis County, the milo was grown and stored on Good's farm in Woodruff County.

In January, 1989, Good sold the milo to Hayes, but prior to the sale, Lawhon notified Hayes orally that the milo was subject to Lawhon's lien. Lawhon requested Hayes to include Lawhon's name as co-payee, if Hayes decided to purchase Good's milo. Hayes does not dispute the fact that he had notice of Lawhon's interest in the milo. Nonetheless, Hayes purchased Good's milo and paid Good by check without including Lawhon as co-payee. Good later cashed the check without paying Lawhon, thus defeating Lawhon's interest in the milo.

On September 25, 1992, Lawhon filed suit against Hayes alleging Hayes negligently destroyed its security interest in the milo crop by failing to name Lawhon as a co-payee on Hayes' check to Good. Lawhon alleged Hayes' failure to include Lawhon on the check even though Hayes knew of Lawhon's interest both from its registration and from Hayes' conversation with Lawhon. Hayes filed a motion to dismiss for failure to state facts upon which relief could be granted. From the pleadings and supporting briefs, the trial court granted Hayes' motion to dismiss without prejudice because the complaint failed to allege facts sufficient to constitute a breach of any legal duty owed by Hayes to Lawhon. Lawhon appeals from the order of dismissal.

While the subject matter of this case is governed by the UCC, Lawhon has elected to pursue his claim against Hayes in tort. The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury. *Keck* v. *American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983). A complaint is subject to dismissal pursuant to Ark. R. Civ. P. 12(b)(6) where it fails to state sufficient facts to support a cause of action, and the appellate court will sustain the trial court if the result is correct. *Carter* v. *F.W.*

---

[2]Lawhon's interest in the milo was inferior to a mortgage held by Farmers' Home Administration. However, Lawhon indicates there were funds remaining after the sale of Good's milo in excess of Farmers' lien that should have been paid to him.

*Woolworth Co.*, 287 Ark. 39, 696 S.W.2d 318 (1985).

On appeal, Lawhon argues Hayes owed it a duty of ordinary care due to Hayes' status as a purchaser of farm products. In pertinent part, Ark. Code Ann. § 4-9-301(1)(c) (Repl. 1991) provides as follows:

> (1)[A]n unperfected security interest is subordinate to the rights of:
>
> . . .
>
> (c) . . . a person who is not a secured party and . . . is a buyer of farm products in ordinary course of business, to the extent that he gives value and receives delivery of the collateral *without knowledge of the security interest* and before it is perfected[.] (Emphasis added.)

*See also* § 4-9-307(1)(Repl. 1991) (code does not protect a buyer in the ordinary course of business who buys farm products from a person engaged in farming operations).

Here, Lawhon's attempt to perfect its interest in the milo was ineffective because it failed to file a financing statement in St. Francis County where the debtor, Good, resided. *See* § 4-9-401(1)(a) (Repl. 1991)[3] Lawhon argues that, even if his interest in the milo was not properly perfected, Hayes had actual knowledge that Lawhon was claiming a security interest in the milo. As a consequence, Lawhon claims Hayes purchased the milo subject to Lawhon's security interest and had a statutory duty to preserve Lawhon's interest under § § 4-9-301(1)(c) and 4-9-306 and 307. However, because Lawhon has no enforceable security interest, its arguments and citation of authority are of no avail.

Under § 4-9-201 (Repl. 1991), a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. Section 4-9-203(1) (Repl. 1991) provides that as to the collateral, a security interest is not enforceable against a third party unless the formal requisites for

---

[3]Under § 4-9-401(1)(a), perfecting a security interest in farm products requires filing in the county of the debtor's residence and, if crops growing or to be grown, in the county where the land is located. Crops are farm products under § 4-9-109(3) (Repl. 1991).

attachment are satisfied. Those requisites for attachment of a security interest in the milo are as follows: (1) the collateral is in the possession of the secured party pursuant to agreement or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be growing, a description of the land concerned; (2) value has been given, and (3) the debtor has rights in the collateral.

In this case, the security agreement between Good and Lawhon is a printed form that indicates it has been approved by the Secretary of State and the Arkansas Commission on Uniform State Laws. While the form identifies Good as the debtor, it is signed only by Noel Lawhon, and contains the following description of the collateral and the land:

> (i) All crops of every kind grown or to be planted heretofore or hereafter, within one year from date of the execution hereof, on lands commonly known and referred to as the K-180 & K-13 Farm in Woodruff County, Arkansas, or at any other place in Woodruff County (ies), Arkansas.
>
> . . .
>
> (v) Other:
>
> Approx. 1600 Acres Milo
>
> Approx. 200 Acres Soybeans

At another area of the form, the following is found:

> 3. That DEBTOR's residence in the State where the Collateral is located is
>
> Rt. 2, Box 126 Wheatley, Ar. St. Francis County[4]

Section 4-9-110 provides that any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. In *Piggott State Bank* v. *Pollard Gin Co.*, 243 Ark. 159, 419 S.W.2d 120 (1967),

---

[4]The underlined portion represents the information filled in; the unlined portion represents the printed matter.

this court identified the test of sufficiency of a description of land on which crops are grown is to make possible the identification of the thing described. In *Piggott*, the description was "7 acres of cotton and 53 acres of soybeans . . . on the lands of S.E. Karnes . . . in Clay County, Arkansas." Finding this description insufficient, this court opined it could not determine whether exactly seven acres of cotton were grown and whether anyone else was also growing cotton upon this same land. In citing pre-UCC cases, the *Piggott* court reaffirmed the rule that the "mortgage of a specified number of articles out of a larger number will not be allowed to prevail, unless it furnishes the data for separating the property intended to be mortgaged from the mass." *Id.* at 161 (cites omitted).

In *People's Bank* v. *Pioneer Food Industries, Inc.*, 253 Ark. 277, 486 S.W.2d 24 (1972), the bank brought a third party action in conversion against a purchaser of crops in which the bank claimed a perfected security interest. This court found a description similar to that in *Piggott* (all crops on number of acres and whose land) was not sufficient, but did uphold the award of damages for those crops grown on land with "an accurate legal description." *Id.* at 280.

Here, Lawhon argues that its security agreement described Good's crops and real property by using A.S.C.S. K-180 and K-13 numbers from which a specific metes and bounds description of real estate could be determined. However, nothing in the abstract reflects the numbers appearing in the agreement were A.S.C.S. numbers, much less that the numbers sufficiently describe the lands so as to put a third person on notice under the UCC. To confuse matters, the financing statement not only reflects unidentified farm numbers but also refers to all crops on land commonly known as the K-180 and K-13 Farm in Woodruff County *or at any place in Woodruff County(ies)*, Arkansas. And to confuse matters further, a reference is made that the *collateral* involved *is located in St. Francis County*. Furthermore, it cannot be determined whether the "approx. 1600 acres of milo" represents the entire acreage or is only part of a larger amount of acreage.

In conclusion, Lawhon has failed to satisfy the requirements of 4-9-203(1) by omitting the signature of the debtor

and by not providing a sufficient description of the land on which the milo was to be grown. As a result, Lawhon's security interest in Good's milo did not attach, and, as the holder of an unattached security interest, Lawhon cannot claim or enforce any duty of care that Article 9 of the UCC may place on a purchaser of farm products in the ordinary course of business. Therefore, we affirm the trial court's order dismissing Lawhon's action under Ark. R. Civ. P. 12(b)(6).

HAYS, J., dissents; BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I certainly agree that no duty of care that could lead to a negligence action was established by Lawhon Farms. My sole reason for concurring is that the opinion could be read to intimate that the Uniform Commercial Code establishes a statutory duty *of care* which failed in this case because no security interest in the milo was created.

I disagree with that suggestion. Even had a security interest attached in the milo, I am not convinced that this could give rise to a tort remedy in negligence in Lawhon Farms.

STEELE HAYS, Justice, dissenting. The majority declines to address the question of whether appellant Lawhon has stated a cause of action because it finds Lawhon had no enforceable security interest in the crops of Mr. Good. I disagree.

Before addressing the validity of the security agreement I would point out that on a 12(b)(6) motion, only the pleadings are to be looked at. If matters outside the complaint are presented on the motion it is treated as a motion for summary judgment. D. Newbern, *Arkansas Civil Procedure* § 11-7 (Sec. Ed. 1993). Further, for purpose of deciding the motion, the factual allegations in the complaint are accepted as true. *Id.* This complaint alleges that the plaintiff held a properly filed security interest. That should be the end of the inquiry. Lawhon is not required to *prove* in a complaint that all the prerequisites for the security agreement have been met. That is a matter of proof, for trial. Even so, if the majority insists on going beyond the complaint to decide the 12(b)(6) motion, Lawhon has still met the requirements of pleading a valid security interest.

First the majority finds there is not a sufficient description,

relying on *Piggott State Bank* v. *Pollard Gin Co.*, 243 Ark. 159, 419 S.W.2d 120 (1967) and *People's Bank* v. *Pioneer Food Industries, Inc.*, 253 Ark. 277, 486 S.W.2d 24 (1972). Those cases are distinguishable from this one, as they also were from *United States* v. *Oakley*, 483 F. Supp. 762 (E.D. Ark. 1980). *Oakley* pointed out that in *Piggott*, there was a segregation of acreage involved that was not otherwise identified in the description of the land where the crops were located. In contrast, the description in *Oakley* read "all crops to be grown on the land in question." The description in this case is like the one in *Oakley*, not in *Piggott*.

As to *Pioneer*, the *Oakley* court said:

> In *Pioneer Food*, the description in question contained a general description of crops and a specific legal description as to three tracts. The legal description was erroneous in that three additional tracts were omitted. In holding that the description was inadequate as to the crops grown on the omitted tracts, the Arkansas Supreme court expressly stated that the question as to the sufficiency of the general description standing alone would remain unanswered.

In *Oakley*, the description stated that the collateral consisted of "all the crops" on the "farm of Alois Ledwig," consisting of "260 acres," "located in White County, Arkansas" and "approximately 3 1/2 miles southeast of McRae." The court, after examining all the relevant Arkansas law, concluded:

> Nothing in the Arkansas statutes or case law indicates that a full legal description of real estate is required in a financing statement covering crops. The information in the financing statement, together with inquiry suggested therein, would enable a stranger to the transaction...to identify the crops.

The court found that the description was sufficient. Other jurisdictions have adopted the test laid down in *Oakley*. *See In the Matter of Robert Younce*, 56 BR 232 (E.D. Wisc. 1985), where the court stated the *Oakley* test required four things: 1) name of the record owner, 2) approximate number of acres on which the crops are grown; 3) the county in which the land is located and 4) the distance of the real estate from the nearest city or town. However, the courts have taken a liberal approach and interpre-

tation of that test and found the description sufficient if it puts a third party on notice and gives enough information from which the third party can, upon inquiry, determine the precise location.

The court in *Younce*, for example, found the first and fourth factors missing in the description, but that the description was nevertheless sufficient. There was some reference to townships and sections, and even though it was not a legal description the court found it was sufficient to locate and identify the collateral.

> A real estate description is not intended to serve as the sole means by which a third party could locate and identify the collateral. Its purpose is to put an interested third party on notice of the existence of a claim. The obligation then runs to the third party to conduct further inquiries suggested by the description of the collateral and real estate upon which it governs to determine the precise location.

*Id.* at 235.

In this case we have the number of acres involved and the county and state where they are located. The description also lists (K180 and K13) numbers which Lawhon contends are identifying numbers with the A.S.C.S. office and that by reference to these A.S.C.S. farm numbers, a specific metes and bounds description of the land is obtainable.

As in *Oakley* and *Younce*, this description would be sufficient because it would "enable third persons, aided by inquiries which the instrument itself suggests, to identify the property." *Oakley, supra*, quoting from *Security Tire & Rubber Co.* v. *Hlass* 246 Ark. 1113, 441 S.W.2d 91 (1969). Under our case law, like that of other jurisdictions, the description in this case is sufficient. *See* 2 White, Summers, *Uniform Commercial Code*, § 24-4 (3rd ed. 1988).

The majority also finds the security agreement deficient because it is not signed by the debtor as required by Ark. Code Ann. § 4-9-203(1) (1987). The question of the debtor's signature is not raised by either party, below or on appeal, nor is it noted by the trial court in its order of dismissal. In a civil proceeding the allegations in a complaint are presumed to be true. *Carter* v. *F.W. Woolworth Co.*, 287 Ark. 39, 696 S.W.2d 318 (1985). *Carter*

also states that a presumption that the allegations are true does not mean that a bare allegation can overcome an accompanying exhibit which plainly refutes the allegation.

In this case Lawhon alleged it had a security agreement that was properly filed. The record on appeal contains a copy of that agreement which bears no signature of the debtor. However, the copy clearly reflects that it is the "Debtor Copy," and there is no reason the debtor would sign his *own* copy. This exhibit, unlike the exhibit in *Carter*, does not "plainly refute the allegation." Lawhon's allegation of a valid security agreement remains unchallenged for purposes of gauging the sufficiency of the pleading.

The only remaining problem is Lawhon's theory for its cause of action based on negligence. I find no direct authority supporting a cause of action for negligence in the context of this case, but the allegations otherwise clearly assert a cause of action for conversion. Under Ark. Code Ann. § 4-9-201 (1987) it is stated in part:

> Except as otherwise provided by this act a security agreement is effective according to its terms between the parties, *against purchasers of the collateral* and against creditors. [My emphasis.]

The rights of a secured party against a purchaser of the collateral are stated in 2. White, Summers, *Uniform Commercial Code*, § 27-7 (3rd ed. 1988).

> When a debtor sells collateral to subject to a perfected security interest, the secured party may proceed (1) against the debtor. . . . or (2) *against the purchaser (a) by replevin or (b) by an action in trespass for conversion of the collateral.* [My emphasis.]

Here, as clearly alleged in the complaint, Hayes, with knowledge of Lawhon's security interest, purchased the collateral in violation of that security interest. While this may not be an action for negligence, that does not mean the pleading is fatally deficient. ARCP 12(b)(6) only requires that sufficient facts to state a claim be pled, and not a correct theory of action. We have stated:

> The statement of facts constitutes the cause of action . . . . All that is necessary is that the complaint state a cause

of action within the jurisdiction of the court.

*C.R.I.& P.* v. *Lockwood*, 244 Ark. 122, 424 S.W.2d 158 (1968). To the same effect see 61A Am. Jur. 2d, Pleadings §§ 75, 77 (1981).

One question remains: What is the result if Lawhon failed to properly file the financing statement but the purchaser had knowledge of its interest? While we did not reach this question in *Affiliated Food Stores, Inc.* v. *Farmers & Merchants Bank*, 300 Ark. 450, 780 S.W.2d 20 (1989), we nevertheless acknowledged it in theory:

> The bank argues that, due to its first filing with the circuit clerk, Affiliated had knowledge of its security interest in the inventory and thus the filing with the circuit clerk was sufficient, citing *In re Davidoff*, 351 F. Supp. 440 (S.D.N.Y. 1972). In that case, in which New York law was applied, it was held that a creditor who had actual knowledge of a prior security interest could not defeat the prior interest on the basis that the prior interest was filed improperly. In the case now before us there is no evidence that Affiliated had actual knowledge of the bank's interest.

There is sound authority for the view that knowledge of a security interest will overcome a misfiling of the financing statement. *See* Hillman, McDonnel, Nicles, *Common law and Equity Under the Uniform Commercial Code* (1985), § 24.05[1]; 2 G. Gilmore, *Security Interests in Personal Property* § 34.2 (1965).

I think the approach is persuasive and in this case there is no dispute that Hayes had knowledge of Lawhon's security interest. Therefore, under the aforementioned authorities, any misfiling of the financing statement is irrelevant and it will be deemed to have been properly filed with regard to a third party with actual knowledge. In that case Lawhon has pled a properly perfected security interest and stated a cause of action, and may proceed against the buyer. Ark. Code Ann. § 49-9-201 (1987); Ark. Code Ann. § 4-9-306(2) (1987).