**Roy WILLMON, Personal Representative of the Estate of Carla Willmon Jones, Deceased, Plaintiff,**

v.

**WAL-MART STORES, INC., Defendant.**

No. LR–C–96–348.

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 10, 1997.

Steven W. Quattlebaum, Williams & Anderson, Little Rock, AR, for Wal–Mart Stores, Inc.

Larry R. Killough, Jr., Boyett, Morgan & Killough, P.A., Searcy, AR, for Carla Willmon Jones.

## ORDER GRANTING SUMMARY JUDGMENT

EISELE, District Judge.

Before the Court is Defendant's Motion for Summary Judgment. Plaintiff has responded to the Motion, and the Court is now prepared to rule. For the reasons set forth in this Order, the Court grants Defendant's Motion for Summary Judgment and dismisses Plaintiff's complaint with prejudice.

## I. BACKGROUND

At approximately 9:30 p.m. on the night of April 17, 1995, Mitchell Skinner and Patric Patterson (referred to herein as "Skinner" or "Patterson" or the "perpetrators") drove to the Wal–Mart Supercenter in Searcy, Arkansas, and parked their vehicle in either the fifth or sixth parking space from the front door. (Skinner Dep. at p. 21). For approximately thirty minutes or longer, the two sat in their vehicle smoking marijuana and methamphetamine. (Id. at p. 22). Shortly thereafter, both men left the vehicle and went to the front of the store where Skinner watched as Patterson pretended to make a telephone call (Id. at 25) and play a video game (Id. at p. 33). Skinner wore shorts and a tank top, and Patterson wore long pants, a pull over shirt, (Id. at 25) and carried a twelve inch knife in his pants which created a bulge in his pocket. (Id. at p. 62).

After faking the telephone call and the video game for approximately ten minutes, the two sat on a bench in front of the store for another ten or fifteen minutes. During this time, Patterson made comments of a sexual nature about various females as they entered the store. (Id. at p. 27). Due to his consumption of methamphetamine, Skinner was shaking and returned to their vehicle. (Id. at p. 25–26).

At approximately 10:15 p.m., Carla Willmon Jones arrived at the Wal–Mart Supercenter, parked her car, and entered the store. While Ms. Jones was in the store, the perpetrators moved their car to the adjacent parking space. When she returned, Patterson approached her and asked if she could help them start their car. When Ms. Jones refused and opened her car door, Patterson shoved her inside. (Id. at p. 30–36). The perpetrators drove Ms. Jones' vehicle to another business approximately one mile away and forced her into the trunk. They returned to the Wal–Mart Supercenter parking lot, picked up their vehicle, and drove away. Later that evening, the perpetrators raped and murdered Ms. Jones.

Plaintiff, acting on behalf of Ms. Jones' estate, filed this wrongful death action in the Circuit Court of White County, and Defendant successfully petitioned for removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. As a result of the perpetrators' criminal acts against Ms. Jones, Plaintiff seeks damages from Defendant under theories of premises liability. Specifically, Plaintiff asserts Defendant was negligent in failing both to implement feasible security precautions and in failing to use ordinary care to maintain its parking lot in a reasonably safe condition.[1] Defendant has filed a Motion for

---

1. Plaintiff asserts Defendant was negligent in failing to: (1) adopt and implement adequate security policies; (2) hire and train competent security personnel; (3) utilize appropriate equipment to protect the safety of customers; (4) eval-

uate its policies with respect to customer safety; (5) make customer security a priority; (6) allocate an appropriate amount of resources to the protection of customers; and (7) recognize the

Summary Judgment on the basis that it did not owe a duty to protect Ms. Jones from the unforeseeable criminal acts committed by third parties.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate only where there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds." *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.1987). The moving party bears the burden of setting forth facts to show that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a party has carried its burden under Rule 56, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 , 1356, 89 L.Ed.2d 538 (1986). Although the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), this does not mean that the nonmoving party may simply rest upon general allegations in the complaint or assertions that there exists a genuine issue of fact. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 887, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

## III. DISCUSSION

Wal-Mart argues it is entitled to summary judgment because it did not have a duty to protect Ms. Jones from the crimes inflicted upon her by the perpetrators. Because this is a diversity action, the Court is required to apply the substantive law of the forum (Arkansas) to this dispute. *Erie R.R. Co. v. Tompkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Sherbert v. Alcan Aluminum Corp.*, 66 F.3d 965, 967 (1995). In a negligence action such as this the plaintiff must prove that the defendant owed her a duty of care which it violated. *Young v. Paxton*, 316 Ark. 655, 660, 873 S.W.2d 546, 549 (1994). Thus, absent a duty, there can be no breach and hence "there can be no liability" sounding in negligence. *Federal Savings & Loan Ins. Corp. v. Smith*, 721 F.Supp. 1039, 1048 (E.D.Ark.1989). The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law. *Lawhon Farm Supply, Inc. v. Hayes*, 316 Ark. 69, 71, 870 S.W.2d 729, 730 (1994).

In *Boren v. Worthen Nat'l Bank of Arkansas*, 324 Ark. 416, 921 S.W.2d 934 (1996),[2] the Arkansas Supreme Court addressed the issue of whether a bank had a duty to protect its patrons from criminal attacks by third parties while those patrons were conducting business at its ATM machine. When analyzing this issue, the court began by emphasizing that "while this court has on several occasions recognized the duty of a business owner to protect its patrons from criminal attacks, we have done so only where the owner or its agent was aware of the danger presented by a particular individual or failed to exercise proper care after an assault had commenced." *Id.* at 940. The court then turned its consideration to "cases in which other jurisdictions have decided the issue presented by the attack on Boren.... It is generally recognized that from other cases

---

obvious threat the perpetrators posed to customers. (Plaintiff's Complaint, para. IV).

**2.** Plaintiff argues that *Boren* is limited only to cases involving the duty of protection a financial institution owes to its customers in connection with their use of ATM's. The Court disagrees. "When Arkansas courts have not decided an issue, the district court ... must attempt to predict

the manner in which Arkansas courts would decide the question." *Pearce v. Cornerstone Clinic for Women*, 938 F.2d 855, 857 (8th Cir.1991). The Court concludes the Arkansas Supreme Court would extend the Boren analysis beyond the factual parameters of financial institutions and its ATM users and apply it to the facts of this case.

involving criminal attacks on business invitees in general, three tests have evolved for determining whether a duty of care is owed by financial institutions to protect ATM users against the criminal acts of third parties." *Id.* (citations omitted).

The three tests are referred to as the Specific Harm Test, the Prior Similar Incidents Test, and the Totality of the Circumstances Test. *Boren,* 324 Ark. 416, 921 S.W.2d at 940–41. *See also* Restatement *(Second) of Torts,* § 344 (1965).[3] As we see "in all three tests, the foreseeability of the criminal act is a crucial element in determining whether a duty is owed." *Id.* at 940. Because the Arkansas Supreme Court expressly disavowed the Totality of the Circumstances Test[4] in *Boren,* the Court will not use that test to analyze the issue of Wal–Mart's duty to Ms. Jones but, instead, will focus on the Specific Harm Test and Prior Similar Incidents Test.

### A. The Specific Harm Test

■ "In this approach, foreseeability, and thus liability, is limited to situations where the business owner is aware of the imminent probability of specific harm to its customer." *Boren,* 324 Ark. 416, 921 S.W.2d at 940 (citing *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975); *Page v. American Nat'l Bank & Trust Co.,* 850 S.W.2d 133 (Tenn.Ct.App.1991); and *Fuga v. Comerica Bank–Detroit,* 202 Mich.App. 380, 509 N.W.2d 778 (1993)). "[T]here will be no duty upon business owners to guard against criminal acts of a third party unless they 'know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee.' " *Boren,* 324 Ark. 416, 921 S.W.2d at 940 (quoting *Page, supra* ). Thus, for Plaintiff to establish that Wal–Mart had a duty to protect Ms. Jones from the perpetrators' criminal acts under this approach, he must show that Wal–Mart knew or should have known that the perpetrators posed an "imminent probability of specific harm" to its customers.

■ Plaintiff argues that the perpetrators' appearance and conduct while on Wal–Mart's parking lot that evening should have alerted store employees to the possibility that they posed an imminent threat of harm to Wal–Mart customers. Specifically, Plaintiff points to the following acts by the perpetrators' in support of his contention: (1) drug use in their car parked close to the store front, (2) Skinner's attire considering the time of year and shaking due to his methamphetamine use (3) Patterson's acts of pretending to make a telephone call and play a video game, (4) Patterson's bulging pocket caused by a concealed knife, (5) certain comments of a sexual nature Patterson made about various female customers as they entered the store, and (6) Patterson's act of shoving Ms. Jones into her car parked somewhere on the parking lot. Plaintiff also has submitted affidavits from three female customers who state they saw the perpetrators at Wal–Mart that

---

**3.** "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the ... intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment f to § 344 states: *Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

**4.** After describing the Totality of the Circumstances Test, the Arkansas Supreme Court stated: "we decline to adopt this approach, as have the majority of jurisdictions that have considered this issue. To do so would result in the imposition of a duty to guard against random criminal acts by third parties, a duty we have heretofore not imposed on any other businesses." *Boren,* 324 Ark. 416, 921 S.W.2d at 941.

evening and felt uncomfortable by their conduct and appearance.

There is no evidence before the Court to suggest that any Wal–Mart employee ever knew that the perpetrators were even on the store's parking lot at any time,[5] much less secretly taking drugs in their car, carrying a concealed knife, or engaging in any of the other actions described above. Although Plaintiff's affidavits show the perpetrators made three female shoppers feel uncomfortable, no evidence suggests any of the three reported the perpetrators' conduct or presence to store employees. Also, no evidence suggests any of the female customers about whom Patterson made sexually oriented comments reported such to store employees.[6]

It is also unclear to the Court how Wal–Mart employees should have known the perpetrators posed an imminent threat of harm to its customers. With the exception of their kidnaping of Ms. Jones, the perpetrators' actions as listed above were non-violent and non-threatening: It is clear that their actions did not foreshadow their subsequent violent crimes against Ms. Jones.

According to Skinner, a Wal–Mart employee once came outside to collect shopping carts as he and Patterson sat on a bench in front of the store. However, during this time, neither Skinner nor Patterson did anything to draw attention to themselves. (Skinner Dep. at p. 51). Despite Patterson carrying a knife in his pants, there is no evidence that he ever threatened anyone with it or even showed it to anyone other than Skinner. Also, during the moments preceding the actual abduction of Ms. Jones, Patterson stood by her car asking for her help in starting his car, which was parked in the adjacent space. Patterson was so close to Ms. Jones, in fact, that he only had to take two or three steps prior to shoving her into her car and fleeing the premises. (Skinner Dep. at p. 54). Thus, the only violent actions by the perpetrators which could possibly

have attracted attention to themselves occurred in the last few seconds the two were openly visible on the parking lot.

Because the perpetrators' actions on Wal–Mart's parking lot were non-violent and not abnormal to the point that Wal–Mart, even if it were aware of such actions, should have known the perpetrators posed an imminent threat of harm to its customers, the Court concludes that the perpetrators' actions discussed above were insufficient to make the criminal attack on Ms. Jones foreseeable to Wal–Mart under the Specific Harm Test. Therefore, Wal–Mart cannot be held liable for Ms. Jones' death under this test because, under the stated circumstances, it lacked a duty to protect her from the perpetrators' criminal acts.

### B. The Prior Similar Incidents Test

"Courts that have employed this approach have focused on the existence of prior similar incidents to determine whether a particular crime was foreseeable. The duty to police premises found in the Restatement (Second) of Torts is the underpinning of this approach." *Boren,* 324 Ark. 416, 921 S.W.2d at 940–41. *See* footnote 3, *supra.* Here, the similarity, frequency, location, and proximity in time of the prior incidents are the key elements to consider. *Id.* at 941. "For a duty to protect invitees from criminal acts by third persons to arise from prior criminal conduct, the prior crimes must be *violent* and *sufficiently numerous* and recent to put the landowner on notice that there is a likelihood of danger...." *Id.* (quoting 3 *Premises Liability,* Second Edition, § 49 (1995) (emphasis added)). "The foreseeability of criminal liability on premises cannot be predicated on a single previous act of violence." *Id.*

Under the Prior Similar Incidents Test, in determining whether the violent abduction, rape, and murder of Ms. Jones was foreseeable to Wal–Mart, only similar crimes

---

5. *Mitchell Skinner states in his deposition that no Wal–Mart employee ever spoke with or approached him or Patric Patterson. (Skinner Dep. at p. 32).*

6. It is at least questionable whether anyone other than Skinner ever heard these comments. Of the five female customers that passed by Patterson as he made the sexually oriented comments, some were accompanied by their husbands. However, none of the women nor any of the husbands responded to Patterson in any way. (Skinner Dep. at p. 56–57.)

which have occurred on Defendant's premises in the recent past should be considered. Plaintiff has submitted copies of numerous [7] reports prepared by the Searcy Police Department in connection with crimes reported at the Wal–Mart Supercenter in Searcy, Arkansas, from January 22, 1993, through April 17, 1995. However, the only incidents of those submitted which could be characterized as violent,[8] and thus possibly similar for purposes of this test, are the following: (1) on December 22, 1993, a disturbance on the parking lot where police were notified that a man was swinging a tire iron at a woman. When officers arrived on the scene they discovered the man was the woman's brother. The woman told police their problem was solved, and the man and woman left together; (2) on May 10, 1994, a fight on the parking lot between three white males and two black males; (3) on June 5, 1994, another fight on the parking lot between one male and four other males; (4) on August 21, 1994, a disturbance inside the store where one male slapped his step-daughter's boyfriend for attempting to speak with her; (5) on December 24, 1994, a reported fight on the parking lot between two males; and (6) on March 3, 1995, an incident inside the store where one male struck another male for owing him money. It is important to note that there were no reports of rapes, abductions, shootings, stabbings, or armed robberies among the crimes Plaintiff submitted as prior similar incidents.

Of the six incidents listed above, none of the corresponding police reports indicate that any type of weapon was involved, and none appear to have resulted in serious bodily harm. In no way does the degree of violence associated with these incidents approach that inherent in the crimes of abduction, rape, and murder. Considering this vast difference between the prior crimes reported on the Wal–Mart Supercenter parking lot and the perpetrators' violent attack on Ms. Jones, none of the prior crimes Plaintiff relies on are "similar" for purposes of the Prior Similar Incidents Test. Because there are no reports of prior similar crimes occurring on the Wal–Mart Supercenter parking lot, the perpetrators' abduction, rape, and murder of Ms. Jones was unforeseeable to Wal–Mart under the Prior Similar Incidents Test. Therefore, Wal–Mart had no duty to protect her from those crimes.

## IV. CONCLUSION

For the foregoing reasons, the horrible criminal acts inflicted upon Ms. Jones were unforeseeable to Wal–Mart, and, thus, Wal–Mart had no duty to protect her from them. Therefore, Wal–Mart's Motion for Summary Judgment will be GRANTED. Plaintiff's complaint shall be dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [9] be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike and Motion in Limine,[10] Motion in Limine Regarding Defendant's Subsequent Precautionary Measures,[11] Motion in Limine Regarding Defendant's Financial Condition,[12] Motion in Limine Pertaining to Evidence Beyond the Relevant Limits of *Boren v. Worthen*,[13] and Motion in Limine Pertaining to Photographs of the Body of Carla Willmon Jones [14] be, and they are hereby, DISMISSED as moot.

7. Plaintiff has submitted fifty-one reports of various types of crimes reported on the Wal–Mart Supercenter parking lot during the period of time from January 22, 1993, through April 17, 1995. These crimes are predominantly property related (theft, vandalism, and breaking and entering) but include indecent exposure, public intoxication, minor domestic disturbances, and possession of controlled substances.

8. Plaintiff submits an incident of domestic violence occurring on September 2, 1994. However, this incident took place at the Wal–Mart Distribution Center rather than the Wal–Mart Supercenter. Due to the different location, this incident should not be considered under the Prior Similar Incidents Test.

9. Docket No. 9.

10. Docket No. 5.

11. Docket No. 15.

12. Docket No. 17.

13. Docket No. 22.

14. Docket No. 24.

IT IS FURTHER ORDERED that Plaintiff's Complaint [15] be, and it is hereby, DISMISSED with prejudice.